THE STATE OF OHIO *v.* MURPHY.

(No. 83-TRC-1602-2—Decided
June 27, 1983.)

Girard Municipal Court.

*Mr. Paul R. Choppa,* assistant city prosecutor, for plaintiff.
*Mr. Martin F. White,* for defendant.

BERNARD, J. On April 14, 1983, at about 12:43 a.m., defendant, James P. Murphy, was operating a motor vehicle on State Route 193, in Liberty Township, Trumbull County. While on routine patrol, Trooper Gerald A. Funelli of the Ohio State Highway Patrol observed Murphy driving in an erratic manner. A stop was effected and Murphy was arrested and charged with operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19 (A)(1). After an intoxilyzer test showed a result of .119, the defendant was also charged with operating a motor vehicle while having .10 grams or more of alcohol by weight per two hundred ten liters of breath, in violation of R.C. 4511.19(A)(3). Defendant's timely motion for a separate trial on that charge was granted and a trial was conducted on June 10, 1983.

Funelli, the arresting officer and intoxilyzer operator, was the only prosecution witness. It was stipulated that the test was conducted in accordance with the rules and regulations of the Ohio Department of Health and that he was a licensed operator. He testified that the breath sample was taken at 1:09 a.m. on the date of the arrest, some twenty-six minutes following the defendant's alleged violation.

Upon cross-examination, Funelli acknowledged that he did not know the type of intoxicating beverage or beverages consumed by defendant, how much alcohol was consumed, or how long before his arrest that the defendant last consumed alcohol. He had no knowledge of how long the defendant had been operating his vehicle, having observed him for only a few minutes prior to arrest. He did not know when the defendant had last eaten or slept or any other individual circumstances relative to this defendant. Funelli knew the age, weight, and size of the defendant from observation and information provided on his driver's license.

1

Counsel for the defendant did not challenge probable cause for the arrest or the officer's qualifications to operate the intoxilyzer. He did not challenge the reliability or validity of the test result or its admissibility. His sole claim was that the test result of .119 did not show beyond a reasonable doubt that the defendant was operating a motor vehicle with a concentration of alcohol of .10 grams or more per two hundred ten liters of his breath some twenty-six minutes earlier.

In support of his position, counsel for defendant subpoenaed the identical intoxilyzer machine used to test the defendant on the morning of his arrest. In a most unusual courtroom demonstration, James P. Murphy consumed six ounces of what was stipulated to be ninety-proof bourbon whiskey over a one half hour period.[1] For the next hour, at periodic intervals of approximately ten minutes each, the defendant submitted to six separate intoxilyzer tests conducted by Funelli. The results of the tests ranged from a low of .110 to a high of .131. No two tests were identical. The changes between each test ranged from a minimum change of .004 to a maximum of .009.

Counsel next called as his only witness Dr. Howard Adelman, a forensic pathologist whose expert qualifications permitted him to testify as to general principles of alcohol absorption. According to Dr. Adelman, a breath testing device does not immediately show a correct reflection of the quantity of alcohol ingested into the body. Some indefinite period of time must pass before the alcohol is absorbed into the bloodstream and consequently, into the lungs. It is the quantity of alcohol contained within one's lungs that the intoxilyzer purports to measure.

The rate of time that it takes for orally ingested alcohol to be fully absorbed from the stomach into the bloodstream will vary from individual to individual. Significant factors include size, weight, age, the condition of an individual's stomach and liver, the amount of food in an individual's stomach, as well as the gastric contents taken with the alcohol or before or after the alcohol is consumed. Dr. Adelman further indicated that the rate of alcohol absorption is not constant within an individual, but will change depending upon his immediate circumstances. If Murphy was to have consumed alcohol on a full stomach as opposed to an empty stomach, the absorption rate would have been significantly slower. The type of food within one's stomach, the amount of alcohol consumed, the rate at which the alcohol was consumed, and the type of intoxicating beverage consumed are also variables. Anxiety and stress will also affect the rate of alcohol absorption.

Once alcohol is fully absorbed into the bloodstream, the body begins to eliminate the alcohol through metabolic processes. The rate of elimination of alcohol from the human body is likewise subject to individual circumstances.

Murphy's repeated fluctuations in the intoxilyzer test results were not unique, according to Dr. Adelman. The test result of .119 did not, he indicated, accurately reflect the breath alcohol content twenty-six minutes earlier. In the absence of other information, he could not conclude with reasonable medical or scientific certainty whether Murphy's breath alcohol was in excess of .10 grams per two hundred ten liters at the time he was operating his vehicle. The content may have been higher or lower than .119. It was a virtual certainty it was not the same.

Consequently, counsel for the defendant made a motion for acquittal. He in-

---

[1] Counsel for defendant indicated that this was not to be construed as the equivalent quantity of alcohol, type of intoxicant, or rate of consumption on the night of the defendant's arrest, but merely a sufficient quantity to insure his experiment would provide demonstrative results.

dicated that in the absence of other evidence, there was reasonable doubt as to whether Murphy had a breath alcohol content of .10 grams or more at the time he was operating his vehicle.

It should be noted from the onset that this court does not regard this case, nor will it treat this case as a challenge to Ohio's drunk driving legislation. Counsel for defendant has not raised issue with the law's constitutionality, nor has he questioned the validity of the use of an intoxilyzer. This case concerns itself with the question of sufficiency of evidence and proof beyond a reasonable doubt. The sole issue, as this court sees it, is whether the result of an intoxilyzer test, taken twenty-six minutes after an alleged violation, and showing a concentration of .119 grams per two hundred ten liters of breath, can be the exclusive basis for a criminal conviction under R.C. 4511.19(A)(3).

Prior to the enactment of this particular legislation, Ohio law prohibited drinking and driving only if the operator of a vehicle was found to be "under the influence of alcohol." An accused was guilty of the offense if the state could prove, beyond a reasonable doubt, that he had consumed a quantity of alcohol sufficient so as to "adversely affect his actions, reactions, conduct, movements, or mental processes in such manner as to deprive him of that clearness of intellect and control of himself which he would otherwise have possessed under the circumstances then existing." *State* v. *Titak* (1955), 75 Ohio Law Abs. 430, 433, paragraph two of the headnotes; *State* v. *Steele* (1952), 95 Ohio App. 107, 111 [52 O.O. 488], paragraph two of the headnotes. The results of a chemical test created statutory presumptions. A test result showing a quantity of alcohol of .10 percent or more created a presumption of guilt. That presumption was not conclusive but rebuttable by evidence of countervailing weight. The quantity of alcohol consumed was not the material issue. The question was what effect, if any, the alcohol had on the accused.

It is still a violation of law to operate a motor vehicle while under the influence of alcohol (R.C. 4511.19[A][1]). No longer, however, is this the sole basis for conviction. Effective March 16, 1983, it is now an offense for any individual to operate a motor vehicle with a prohibited concentration of alcohol as measured by blood (R.C. 4511.19[A][2]), urine (R.C. 4511.19 [A][4]), or, as in this case, breath (R.C. 4511.19[A][3]). The controversial "per se" provisions mandate convictions exclusively on the quantity of alcohol, regardless of evidence of physical impairment or lack thereof. One may be in violation of driving under the influence without violating a "per se" provision and vice versa.

The courts of at least seven other states have upheld the constitutionality of statutes containing provisions similar to Ohio's new legislation.[2] No reported case has dealt specifically with the topic before this court.[3] The novel defense presented on Murphy's behalf has convinced this court that the result of a breath test does not, in fact, precisely reflect breath alcohol content twenty-six minutes earlier. The question still remains as to whether the legislature intended a legally admissible breath test above a .10 reading to be conclusive of guilt.

R.C. 4511.19(A) provides:

"No person shall operate any vehicle, streetcar, or trackless trolley within this state if any of the following apply:

"* * *

"(3) The person has a concentration of

---

[2] California, Delaware, Florida, Missouri, New York, North Carolina and Oregon.

[3] In *State* v. *Basinger* (1976), 30 N.C. App. 45, 226 S.E.2d 216, the court rejected the defendant's argument that the result of a breathalyzer test performed fifty minutes after his arrest was inadmissible. The defendant in the instant case is not, however, challenging the admissibility of the breath test results.

ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath; * * *"

R.C. 4511.19(B) provides:

"In any criminal prosecution for a violation of this section * * * the court *may* admit evidence on the concentration of alcohol in the defendant's blood, breath, or urine at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation. * * *

"* * *

"If there was at the time [the] bodily substance was withdrawn a concentration of * * * less than ten-hundredths of one gram by weight of alcohol per two hundred ten liters of his breath, * * * such fact *may be considered with other competent evidence* in determining the guilt or innocence of the defendant." (Emphasis added.)

The legislature could have easily stated that an admissible chemical test showing a concentration of alcohol above a prohibited level was *prima facie* evidence of guilt. It chose not to do so. Further, the legislature could have stated that an admissible chemical test showing a concentration of alcohol within permissible limits was an absolute defense. Again, the legislature rejected this approach. Instead, the statute contemplates *other competent evidence* as being pertinent to the charge.

It is apparent that it was not the intent of the legislature to elevate the results of a chemical test to the lofty status of judge and jury in a criminal prosecution. Significantly, the law does not require that a chemical test be administered in order to sustain a conviction under any of the "per se" provisions. It follows that if the state can prove beyond a reasonable doubt that the operator of a motor vehicle consumed a sufficient quantity of alcohol to exceed the legal limit, that individual may be lawfully convicted regardless of whether a chemical test was performed. An individual who has tested below a prohibited level does not necessarily escape prosecution under a "per se" provision. If, for example, Murphy had tested .09, but the state could prove by other competent evidence that his breath alcohol concentration was .10 or higher twenty-six minutes earlier, his conviction would be proper.

In contrast with the legislation of other states with similar restrictions, the Ohio statute is far less dependent on the result of a chemical test. The Oregon statute provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person: (a) Has .10 percent or more by weight of alcohol in the blood of the person *as shown by chemical analysis of the breath, blood or urine of the person.*" (Emphasis added.)[4]

Unlike the "per se" provisions of Ohio law, a chemical analysis is required in order to sustain a conviction. The Delaware statute goes even further:

"Any person charged * * * whose blood alcohol concentration is one tenth of 1% or more by weight as shown by a chemical analysis of the blood, breath or urine sample taken within 4 hours of the alleged offense *shall be guilty * * *.*" (Emphasis added.)[5]

This court does not believe that the Ohio Legislature intended the results of a chemical test, remote in time, to be so conclusive. In this state, the prosecution must prove a prohibited concentration of alcohol at the time of operation of the vehicle, not at the time of the test result.

It has been argued on behalf of the

---

[4] Ore. Rev. Stat. 487.540. New York's statute, Veh. & Traf. Law Section 1192(2), also requires a chemical analysis.

[5] 21 Del. Code Anno. Section 4177(b).

state that the in-court demonstration showed a consistent decrease in the measured concentration of alcohol over the last forty minutes, the defendant having reached his peak of alcohol absorption some twenty minutes after his last drink was consumed. The prosecutor asks this court to conclude that the test result taken twenty-six minutes after the defendant's arrest actually reflects a lower concentration of alcohol than at the time he was operating his vehicle.

The court believes that the prosecutor is probably correct. But strong probabilities of guilt are insufficient to sustain a conviction. It is a well-established principle, incorporated into the grain of our constitutional system, that a person accused of a crime is presumed innocent until proven guilty. The prosecution has the heavy burden of introducing evidence of guilt beyond a reasonable doubt in order to rebut this presumption (R.C. 2901.05). A guilty verdict is justified only when the evidence produced completely satisfies this burden.[6]

Dr. Adelman has testified to a variety of factors that will affect the rate of alcohol absorption within an individual. The state has offered no proof that the circumstances under which Murphy consumed alcohol on the night of his arrest were similar to those of his courtroom consumption. The court can only conclude that the intoxilyzer result of .119 would not have been the same if the defendant had been tested at the time of arrest. The result may very well have been higher if during the twenty-six minutes between the time of arrest and the intoxilyzer test his body was eliminating alcohol. If, however, alcohol was still being absorbed from his stomach during those twenty-six minutes, the concentration of alcohol at the time he was operating his vehicle may have been below .10 grams per two hundred ten liters of his breath.

It is therefore the inescapable and somewhat reluctant conclusion of this court that a reasonable doubt exists and the court finds the defendant not guilty. In so holding, the court does not wish to place a greater burden on law enforcement efforts to apprehend drunk drivers. But in the absence of other competent evidence, the .119 intoxilyzer result twenty-six minutes after the fact cannot sustain a criminal conviction.[7]

It is noted that this decision in no way reflects upon the guilt or innocence of the defendant on the charge of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), which is set for trial at a later date.

*Defendant not guilty.*

---

[6] *Adams* v. *State* (1877), 31 Ohio St. 462; *State* v. *Winterich* (1952), 157 Ohio St. 414 [47 O.O. 316].

[7] The court attempted to establish through Dr. Adelman at what concentration of alcohol one could confidently make a finding of guilt:

"Court: Would your answers have been any different if the 26 minute test showed a result of .20 or .25?

"Dr. Adelman: Yes.

"Court: Will you explain that, please?

"Dr. Adelman: If the test scored at that level, he would most likely have been well above the limit at the time of arrest.

"Court: Can you within a degree of reasonable medical certainty give a reading that would obviously be sufficiently high that it would not have dissipated in 26 minutes?

"Dr. Adelman: No, not really."