# KNIGHT v STATE OF FLORIDA
## Case No. 84-1114 CA
Seventh Judicial Circuit, St. Johns County

March 17, 1986

### APPEARANCES OF COUNSEL

**Jason G. Reynolds** for appellant.

**Alexander R. Christine, Jr.,** Assistant State Attorney, for appellee.

### OPINION OF THE COURT

RICHARD O. WATSON, Circuit Judge.

When Deputy Sheriff Naughton and rescue arrived at the one car accident, they discovered a 1980 Datsun on its roof in the median of I-95. Rescue, the first on the scene, found Defendant Knight, sitting on

the running board of a fire truck which had responded to the incident. The accident occurred at approximately 1:00 a.m. or after.

Deputy Naughton observed Defendant's eyes were a little bloodshot, smelled alcohol on Defendant's breath and noticed Defendant weaving a little when he stood, but not much.

When FHP Trooper Tayloe arrived, after conducting his accident investigation, Trooper Tayloe advised Defendant he was conducting a criminal investigation. He advised Defendant of his constitutional rights and Defendant acknowledged he understood them. Trooper Tayloe then asked Defendant who owned the car and who was driving the car. Defendant replied he owned the car and he was driving it. Defendant had the keys to the car in his possession.

Trooper Tayloe noticed a strong smell of alcoholic beverages on Defendant's breath, noticed his eyes were watery and his face flushed. Defendant was talkative and "on the carefree side". He had difficulty standing and had to place his hand on objects for support. The trooper testified he showed the customary disorientation that accident victims show. The trooper denied that Defendant was confused at the scene, but appeared disorientated at the time of the breathalyzer test.

Defendant was transported to the hospital, treated and released. While there a blood test was taken at 3:41 a.m. at the request of the trooper. The test showed Defendant had a blood alcohol level of .21 percent. Defendant was then transported to jail where he was given a field sobriety test at 4:35 a.m. and a breathalyzer test at 4:42 a.m. He failed to satisfactorily perform the field test and the breathalyzer test showed his blood alcohol level was .19 percent. Defendant told the trooper he had been drinking and when asked how many he answered, "four in the last hour". Defendant also told the trooper that he had started drinking at 8:30 p.m. and stopped drinking at 10:30 p.m. The booking report indicates Defendant was 5 feet 6 inches tall and weighed 165 pounds.

Paramedic Herring testified that Defendant was shook up from the accident, but could ambulate once he was assisted across the ditch. He appeared to be aware of what happened and was able to respond to questions regarding possible injuries. During the trip to the hospital Defendant took off a cervical collar telling rescue he did not need it. At the hospital he refused to sign himself in and started to leave, but Herring was able to talk him in to staying.

Defendant was charged with driving while under the influence of intoxicating beverages, F.S. 316.193, and driving with unlawful blood alcohol, F.S. 316.193(1)(b) and no valid driver's license. Judgment of

122

acquittal was granted in the charge of driving without a valid driver's license. Defendant was convicted on Count III of being in actual physical control of a motor vehicle while having an unlawful blood alcohol level. His driver's license was revoked for 5 years (this being his second DUI conviction within 3 years), a fine of $500.00 was imposed plus Court costs and he was placed on probation for 6 months.

Defendant raises five points on appeal. Point I: Whether Defendant's statements were improperly admitted in violation of the corpus delicti rule.

Defendant admitted to the trooper that he was the owner and driver of the vehicle. That statement is only admissible if the State presents some independent proof, direct or circumstantial, of the corpus delicti. Corpus delicti need not be proved beyond reasonable doubt. It is sufficient if the evidence tends to show a crime was committed. The issue is whether the evidence of corpus delicti is prima facie sufficient to admit the statements of Defendant.

Defendant was found at the scene of the accident, appearing to be under the influence, appearing to have been in the accident and in possession of the keys to the only vehicle involved in the accident. No other person at the scene was an occupant of the vehicle and no evidence of any other occupant was found. The blood test and breathalyzer results were greater than .10 percent. That evidence tends to prove that Defendant did drive or was in actual physical control of a vehicle in Florida and had a blood alcohol level of .10 percent or above. *County of Dade v. Pedigo*, 181 So.2d 720 (Fla. 3d DCA 1966); *State v. Allen*, 335 So.2d 823 (Fla. 1976).

Point II: Whether Defendant's statements were shown to have been voluntarily given.

Defendant was read his Miranda rights and stated he understood them. Defendant was able to converse with rescue regarding his injuries, was able to walk, was able to identify himself as the owner and driver and to relate where he had been and how much he had to drink. He was treated at the hospital and released.

Except for some disorientation which apparently is commonly seen in accident victims there is no indication that Defendant's degree of intoxication was such as to render him incapable of understanding his rights and intelligently waiving those rights. As argued in the State's brief—Defendant was too intoxicated to legally operate a motor vehicle, but not too intoxicated to knowingly and intelligently waive his constitutional rights. See *Stevens v. State*, 419 So.2d 1058 (Fla. 1982).

Point III: Whether Defendant's statements were privileged pursuant to Section 316.066(4), F.S. (1984).

Point III is without merit. The testimony is undisputed that upon completion of the accident investigation the trooper informed the Defendant he was conducting a criminal investigation and advised him of his constitutional rights. The filing of the supplemental accident report 15 days later did not affect the criminal investigation. The trooper is not barred from continuing his accident investigation after his criminal investigation is completed. In addition there was no showing as to what was contained in the supplemental report. The only purpose of the statute is to clothe with statutory immunity only such *statements* and *communications* as the driver, owner or occupant of a vehicle is compelled to make in order to comply with Section 316.066(1) and (2), F.S. Much evidence appearing on an accident report is admissible at trial. See *Brackin v. Boles*, 452 So.2d 540 (Fla. 1984).

Point IV: The breathalyzer, blood test and field sobriety test results were inadmissible because of their irrelevance, remoteness and prejudicial effect.

The blood test was taken 2 hours and 41 minutes after the approximately time of the accident, 1:00 a.m. The breathalyzer was taken at 4:42 a.m. The tests reveal Defendant's blood alcohol content at the time of the tests, but not at the time of the accident. What evidence is there to support the charge that Defendant had a blood alcohol content of .10 percent as of the time of the accident? The amount of the blood alcohol content at the time of the accident could have been proven by extrapolation by expert testimony or perhaps the Court could have taken judicial notice of a recognized formula for determining the rate of absorption of alcohol into the bloodstream and the rate of its elimination, thus proving the blood alcohol content of Defendant at 1:00 a.m.

The Florida Evidence Code enumerates the facts which may be judicially noticed by Florida Courts and the procedure to be followed. Section 90.202(12) authorizes the Court to judicially notice facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Sections 90.203 and 90.204 set forth the procedure to be followed. There is no record of the State having complied with Section 90.203 nor of the Court having complied with Section 90.204. In fact the trial judge did not announce he was taking judicial notice of any facts.

124

The question then becomes whether this Court as an Appellate Court can or should take judicial notice of an adjudicative fact which was not judicially noticed by the trial Court. There is precedent for and against such a procedure. Professor Charles W. Ehrhardt in his *Florida Evidence*, Volume I, Second Edition, Section 207.2, discussed the arguments for and against the Appellate Court judicially noting facts not judicially noticed in the trial Court. He further states that:

"In a criminal case, due process may prohibit the Appellate Court from noticing facts that were not before the judge or jury below."

That was not a problem for the Florida Supreme Court in *Fuller v. State*, 31 So.2d 259 (Fla. 1947).

The only fact that can be judicially notice is one about which there is no dispute.

The defense contends the State provided no evidence from which the trial judge could determine that Defendant's blood alcohol level was .10 or about at the time of the accident.

This Court notified the parties that it would take judicial notice of the formula used for estimating prior blood alcohol content. At the hearing both parties were allowed to argue matters relevant to the propriety of taking judicial notice and the nature of the matter noticed.

Defendant argues that retrograde extrapolations of blood alcohol are unreliable and that tests conducted two to five hours after the accident are highly remote and the tests results not material. Defendant quotes from Dr. Kurt M. Dubowski's article on Alcohol and Traffic Safety 108 (U.S. Dept. of H.E. in 1963) that tests performed within 30 minutes of the material time are generally accepted provided the Defendant is at or past the maximal blood alcohol level at the material time.

Defendant also cites *State v. Murphy*, 453 N.E. 2d 1304 (Ohio Mun. Ct. 1983) as invalidating a breath test taken 26 minutes after Defendant's arrest. That case is inapplicable to the facts of the case before the Court. In *Murphy* the test result was .119. The Court was correct in finding it could have been higher or lower 26 minutes before the test.

The technical information recited hereafter was taken by the Court from *Defense of Drunk Driving Cases*, Third Edition, by Richard R. Erwin and the materials submitted by Defendant:

". . . the experts have agreed that under ordinary circumstances the blood alcohol content will reach its peak somewhere between 45 and

**125**

75 minutes after consumption with an average time of one hour." Section 15.02(1).

"If the drinking occurred more or less uniformly over a period of several or many hours, the amount consumed up to the last hour of drinking will be completely absorbed by the end of the entire drinking period, and the level in the blood will be close to maximum. Only the portion consumed in the last hour of drinking will contribute to a further rise in the blood alcohol content. On the other hand, if all or a major portion of the drinking occurred within a short period of time, the level of alcohol in the blood at the end of the drinking will be considerably below that seen an hour later. As will be shown shortly, the magnitude of blood alcohol content prevailing at a time of offense prior to complete absorption can be closely approximated. It is therefore important to learn from your client, not only how much he drank, but when he started drinking and when he finished." Section 15.02(2).

"The metabolism of alcohol refers to its destruction in the body and its elimination resulting in its disappearance from the blood. As stated earlier, a value of .015 percent per hour—Widmark factor B—is generally accepted as the rate of alcohol clearance from the blood. It is the figure usually used by experts in calculating the amount of alcohol consumed from the percentage found in the blood or in predicting the blood alcohol content at some time prior to the actual blood test." Section 15.03.

"Although an average clearance rate is commonly used by experts (usually for the prosecution) for extrapolating the blood alcohol level at some time prior to the actual blood test, this rate may vary considerably between individuals. Many experts will testify that the rate varies from .01 to .02 percent per hour; none will testify that it does not vary." Section 15.03(2).

"It is apparent from the foregoing that any attempt to relate the probable blood alcohol level back to a period prior to the time that the same was taken involves guesswork. The guesswork can be obviated by actual determining the particular individual clearance rate. A convenient though infrequently used way of knowing the Defendant's clearance rate is through consecutive tests separated by an interval of an hour or so. This would provide a factual basis for estimating the blood alcohol level of the person at a given time before the sample was taken." Section 15.03(3).

Defendant had nothing to drink after 1:00 a.m. The blood test

showing a blood alcohol level of .21 was taken at 3:41 a.m., 2 hours and 41 minutes after Defendant's last drink assuming it was consumed immediately prior to the accident. The maximum absorption time is 75 minutes (and probably less in most cases), so there can be no doubt that as of the time of the test the alcohol was completely absorbed into the bloodstream. That fact is also supported by the breathalyzer showing a blood alcohol level of .19 given Defendant at 4:42 a.m., one hour after the blood test, indicating that Defendant's blood alcohol level had declined since the blood test.

*Defendant's clearance rate* as shown by the tests taken an hour apart *was .02 percent per hour.* Giving Defendant the benefit of the doubt and extrapolating Defendant's blood alcohol level a full three hours before the first test, approximately 20 minutes before the accident, Defendant's blood alcohol level would have been .15.

The tests were relevant and given the other evidence of intoxication, the evidence was sufficient to support the trial judge's finding of a violation of F.S. 316.193(1)(b).

It is therefore,

ORDERED

The Judgment and Sentence is affirmed.