THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT NEWMAN, Defendant-Appellant.

Third District   No. 3—87—0287

Opinion filed November 6, 1987.—Modified opinion filed December 2, 1987.

Kozlowski, Polito & Feeley, of Joliet (Joseph C. Polito, of counsel), for appellant.

Edward Petka, State's Attorney, of Joliet (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant was convicted of driving with a breath-alcohol concentration of .10 or more and failure to dim headlights. The trial court denied his motions for a new trial, for judgment notwithstanding the verdict, and in arrest of judgment, and the defendant appealed. We affirm.

Prior to trial, the defendant, Robert Newman, filed a petition to rescind the statutory summary suspension of his driver's license. At the hearing on the petition, the officer who administered the breathalyzer did not testify, so the State failed to establish that the defendant was observed continuously for 20 minutes before the test was given. Based on the lack of foundation, the defendant objected to admission of the test results at the suspension hearing. The trial judge sustained the objection, refused to admit the test results, and rescinded the summary suspension. Newman later filed a motion *in limine* to bar the State from introducing the breathalyzer test results at trial, arguing that the court's ruling at the suspension hearing collaterally estopped the State from introducing the results. The trial court denied the motion.

The testimony at trial established the following. Shortly before 12:45 a.m. on March 21, 1986, the defendant was stopped by Crest Hill police officers John Robbins and Thomas Kubaitis. The officers effected the traffic stop because Newman failed to dim his headlights and they observed him drive erratically, weaving from the center of his lane as he traveled on a four-lane road. The defendant swayed as he walked, his eyes were glassy and bloodshot, and his breath smelled of alcoholic beverages. His performance on various field sobriety tests was poor. Officer Robbins placed the defendant under arrest for driving under the influence of alcohol and took him to the Crest Hill police station, where he was also charged with improper lane usage and failure to dim headlights.

At the police station, Newman submitted to a breathalyzer test which was administered by Officer Kubaitis. Officer Kubaitis observed the defendant continuously for 25 minutes before he administered the breathalyzer test. Newman was tested at 1:15 a.m., approximately 30 minutes after he was arrested. The test results showed Newman's breath-alcohol concentration to be .13 and he was later charged with driving with a breath-alcohol concentration of .10 or more. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(1).) Officer Kubaitis testified that immediately before he tested the defendant, the breathalyzer was checked and was in good working order.

Richard Hall, an attorney who has extensive knowledge of and ex-

perience in performing breathalyzer tests, testified that the breathalyzer cannot make an accurate blood-alcohol determination because it does not consider factors such as blood composition and the temperature of the breath as it leaves the body, which vary from individual to individual and affect test results. He further testified that if 30 to 35 minutes elapse between the driving occurrence and administration of the breathalyzer test, the test results cannot reflect the blood-alcohol level which was present when the person was driving.

Newman took the stand in his own behalf. He admitted that he had not eaten lunch or dinner and that during the 2½-hour period he was at the lounge, he consumed four alcoholic drinks and took a sip of a fifth one. He stated that he felt sober when he left the lounge and that he believed he could operate a motor vehicle safely. He acknowledged changing lanes once as he drove home. The defendant stated that he was nervous when he performed the field tests and that a back injury he sustained eight years earlier affected his performance on one of the tests.

The jury found the defendant guilty of driving with a breath-alcohol concentration of .10 or more and failure to dim headlights, but not guilty of improper lane usage and driving under the influence of alcohol. The defendant filed a motion in arrest of judgment, alleging that the statute under which he was convicted of driving with a breath-alcohol concentration of .10 or more is unconstitutional. He also filed a motion seeking a judgment notwithstanding the verdict, or in the alternative, a new trial. The motions were denied and the defendant was fined $300 and ordered to successfully complete a remedial driving course. The defendant then filed the instant appeal.

■■ ■ The defendant's first argument on appeal is that the trial court erred in denying his motion *in limine* which alleged that the court's foundation ruling at the summary suspension hearing collaterally estopped the State from introducing the breathalyzer results at trial. The State argues that collateral estoppel does not apply here. We agree with the State.

The doctrine of collateral estoppel provides that when an issue of ultimate fact has been determined by a final judgment on the merits, the issue cannot be relitigated by the parties in a later proceeding. (*Oberman v. Byrne* (1983), 112 Ill. App. 3d 155.) Collateral estoppel does not apply here for two reasons. First, it does not apply because the question of whether the State laid a proper foundation at the suspension hearing is a question of law, not fact, and collateral estoppel applies only to issues of fact. (*Oberman*, 112 Ill. App. 3d at 160.) Second, the court's ruling on the foundation objection was not a final

judgment on the merits of an ultimate issue. Therefore, the trial court correctly determined that the foundation ruling at the suspension hearing did not collaterally estop the State from presenting evidence relating to the breathalyzer test results at trial.

■■ The defendant next argues that he was not proved guilty beyond a reasonable doubt of driving with a breath-alcohol concentration of .10 or more. Newman calls our attention to the testimony of his expert, who stated that it is virtually impossible to determine from a breath test given 30 minutes after an arrest what the defendant's blood-alcohol content was at the time of the arrest. The defendant also points out that because the jury acquitted him of charges of driving under the influence and improper lane usage, he was not proven guilty of driving with a breath-alcohol concentration of .10 or more. The State argues that the totality of the circumstances established Newman's guilt.

We find that the evidence was sufficient for the jury to have found beyond a reasonable doubt that the defendant had at least a .10 concentration of alcohol in his breath at the time of his driving. An argument similar to the one Newman makes regarding the validity of the breathalyzer results was considered in *People v. Kappas* (1983), 120 Ill. App. 3d 123. In *Kappas*, the defendant argued that because breathalyzer results vary as the body absorbs ingested alcohol, there is no assurance that his blood-alcohol level, measured 38 minutes after his arrest, was the same as it was at the time of driving. The court acknowledged that a breathalyzer test administered at any time other than immediately upon arrest would likely yield different results than a test given later, but found that matters of delay between driving and testing go to the weight to be given to the breathalyzer results and must be viewed in light of the circumstances surrounding the arrest. (*Kappas*, 120 Ill. App. 3d at 128-29.) The court noted that there was additional evidence to support the verdict in that case, such as the police officers observed the defendant's car weaving out of his lane and they detected the odor of alcohol on his breath, the defendant performed poorly when put through field sobriety tests, and he admitted drinking three beers before driving. The court then upheld the jury's verdict.

In the instant case, the breathalyzer test was administered 30 minutes after the arrest, just five minutes beyond completion of the required 20 minutes of observation. The officers observed that the defendant failed to dim his headlights and drove erratically. After stopping the defendant, they detected the odor of alcohol and noticed that his eyes were glassy and bloodshot. Newman was unable to per-

form the various field sobriety tests. Finally, he admitted drinking at least four alcoholic beverages on an empty stomach before he began driving. Therefore, even though the jury failed to convict Newman of driving under the influence and there was a slight delay in the administration of the breathalyzer test, there was ample evidence to support the finding that at the time he was driving, the defendant's breath-alcohol content was at or above the level proscribed by statute.

During oral argument before this court, the defendant moved to strike his third issue on appeal, that the court erred in denying the motion in arrest of judgment. Accordingly, we will not address this issue. For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

Affirmed.

SCOTT and WOMBACHER, JJ., concur.