STATE OF NEBRASKA, APPELLEE, V. RICK L. KUBIK, APPELLANT.
456 N.W.2d 487

Filed June 15, 1990.   No. 89-805.

Clarence E. Mock, of Johnson and Mock, for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

After a jury trial, the defendant, Rick L. Kubik, was convicted of driving under the influence of alcoholic liquor, third offense, in violation of Neb. Rev. Stat. § 39-669.07 (Supp. 1987). This statute has since been amended. He was sentenced to 3 months' confinement in the county jail, was fined $500, and a 15-year revocation of his operator's license was ordered.

The record shows that at approximately 3:50 a.m. on June 19, 1988, the defendant was stopped by a West Point police officer within the city limits of West Point, Nebraska, after the officer observed the defendant's vehicle weaving from side to side. Both the defendant and the arresting officer exited their vehicles. The defendant appeared to have trouble with his balance, and the officer saw that the defendant's face was flushed. The officer also noticed a strong odor of alcohol about the defendant. The defendant failed three field sobriety tests and told the officer he had been drinking to the point where he wanted to stop and sleep. The defendant was arrested and taken to the West Point police station. A test of the defendant's breath was conducted at 4:33 a.m. using an Intoxilyzer Model 4011AS device. The Intoxilyzer showed a reading of .139.

The defendant was charged with "DRIVING WHILE

UNDER THE INFLUENCE OF ALCOHOLIC LIQUOR (BREATH TEST) (Third offense)," in violation of subsections (1) or (3) of § 39-669.07. Section 39-669.07 provided in part:

It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle:

(1) While under the influence of alcoholic liquor or of any drug;

(2) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood;

(3) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath; or

(4) When such person has a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her urine.

The defendant moved to quash the complaint, claiming that § 39-669.07 violated the equal protection clauses of the U.S. and Nebraska Constitutions. The motion was overruled, and the defendant was convicted as charged. The judgment of the county court was affirmed by the district court on July 6, 1989.

The defendant has timely appealed to this court and contends the trial court erred (1) in failing to sustain his motion to quash the complaint, (2) in admitting into evidence the results of the Intoxilyzer breath test given to the defendant after his arrest, and (3) in giving jury instruction No. 10.

### I. Motion to Quash.

U.S. Const. amend. XIV, § 1, provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Neb. Const. art. III, § 18, deals with disparate treatment by special legislation. *Porter v. Jensen*, 223 Neb. 438, 390 N.W.2d 511 (1986).

The defendant claims that § 39-669.07(2) to (4), as applied, violated his right to equal protection under the law by arbitrarily subjecting him to a different standard of proof than other similarly situated drivers. He contends that the Legislature "has simply subjected [him] and other similarly situated persons accused of violating [§ 39-669.07(2) to (4)] to

different standards of proof and different procedural safeguards without any rational connection to prosecuting intoxicated drivers." Brief for appellant at 14. He further insists that the guilt or innocence of the driver is determined largely by the arbitrary selection of testing methods by the arresting law enforcement official.

Equal protection guarantees that similar persons will be dealt with similarly by the state, but does not foreclose the state from classifying persons or from differentiating one class from another when enacting legislation. *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985). The standard of review used by courts when reviewing statutes challenged on equal protection grounds depends upon the nature of the classification and the rights affected. If the classification involves either a suspect class or fundamental rights, courts will analyze the statute with strict scrutiny. Under this test, the end the Legislature seeks to effectuate must be a compelling state interest, and the means employed in the statute must be such that no less restrictive alternative exists. *Id*.

However, driving is not a fundamental right, and drunk drivers are not a suspect class for purposes of legislative classification. *State v. Michalski, supra*; *Porter v. Jensen, supra*.

> Consequently, it is not necessary that the end the Legislature seeks to effectuate with respect to drunk drivers be a compelling state interest and that the means employed to accomplish that end be such that no less restrictive alternative exists. All that is required is that there be a rational relationship between a legitimate state interest and the statutory means selected by the Legislature to accomplish that purpose.

*Porter v. Jensen, supra* at 444, 390 N.W.2d at 515-16; *State v. Michalski, supra*.

In *State v. Michalski, supra* at 388, 377 N.W.2d at 516, we concluded that "the classification made in § 39-669.07 [Reissue 1984], that is, the line drawn between drivers who are drunk and drivers who are sober, is one rationally related to a legitimate governmental end." The same is true of § 39-669.07 (Supp. 1987).

Statutes are presumed to be constitutional, and the burden of establishing unconstitutionality is on the party attacking the validity of the statute. *State v. Comeau*, 233 Neb. 907, 448 N.W.2d 595 (1989). Unconstitutionality must be clearly established before a statute will be declared void. *Id.*

This court has for many years characterized a violation of § 39-669.07 or its predecessors as one offense which may be proven in different ways. See, e.g., *State v. Diesing*, 231 Neb. 132, 435 N.W.2d 190 (1989) (§ 39-669.07 (Supp. 1987)); *State v. Babcock*, 227 Neb. 649, 419 N.W.2d 527 (1988) (§ 39-669.07 (Cum. Supp. 1986)); *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987) (§ 39-669.07 (Reissue 1984)); *State v. Tomes*, 218 Neb. 148, 352 N.W.2d 608 (1984) (§ 39-669.07 (Reissue 1984)); *State v. Hilker*, 210 Neb. 810, 317 N.W.2d 82 (1982) (§ 39-669.07 (Cum. Supp. 1980)); *State v. Jablonski*, 199 Neb. 341, 258 N.W.2d 918 (1977), *overruled on other grounds, State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980) (§ 39-669.07 (Reissue 1974)); *State v. Weidner*, 192 Neb. 161, 219 N.W.2d 742 (1974) (§ 39-727 (Cum. Supp. 1972)).

A person's breath alcohol concentration may be probative of impairment under subsection (1), as well as proof of a violation of § 39-669.07 (Supp. 1987) based solely on breath alcohol concentration pursuant to subsection (3). See, *State v. Schwade*, 177 Neb. 844, 131 N.W.2d 421 (1964); *Vore v. State*, 158 Neb. 222, 63 N.W.2d 141 (1954); *State v. McManus*, 152 Wis. 2d 113, 447 N.W.2d 654 (1989). The defendant has not established that proscribing a particular concentration of breath alcohol is wholly irrelevant to achieving the purpose of prohibiting people from driving while under the influence of drugs or alcohol. The relationship between the classification and its goal is rational. See *State v. Brayman*, 110 Wash. 2d 183, 751 P.2d 294 (1988). The defendant's assignment of error is without merit.

## II. Admission of Intoxilyzer Breath Test Result.

In his second assignment of error, the defendant contends the trial court erred in admitting the Intoxilyzer test results because the State failed to establish through expert testimony or other facts a connection between the test result and the defendant's

breath alcohol content at the time of his arrest. He complains that in this respect the county court erred in admitting the results of the Intoxilyzer test without sufficient factual basis to establish that the evidence was relevant. See Neb. Evid. R. 401 and 403 (Neb. Rev. Stat. §§ 27-401 and 27-403 (Reissue 1989)).

In this case, the defendant was stopped at 3:50 a.m. and was given several field sobriety tests. The Intoxilyzer test was administered at 4:33 a.m., after the 15-minute waiting period mandated by the regulations of the Nebraska Department of Health.

Neb. Rev. Stat. § 39-669.11 (Reissue 1988) provides:

> Any test made under the provisions of section 39-669.08 [the implied consent law], if made in conformity with the requirements of this section, *shall be competent evidence* in any prosecution under a state statute . . . involving operating a motor vehicle while under the influence of alcoholic liquor, or involving driving or being in actual physical control of a motor vehicle when the concentration of alcohol in the blood, breath, or urine is in excess of allowable levels, in violation of section 39-669.07 . . . .

(Emphasis supplied.) Section 39-669.11 further provides:

> Tests to be considered valid shall have been performed according to methods approved by the Department of Health and by an individual possessing a valid permit issued by such department for such purpose. The department is authorized to approve satisfactory techniques or methods and to ascertain the qualifications and competence of individuals to perform such tests and to issue permits which shall be subject to termination or revocation at the discretion of the department.

In addition to the requirements of § 39-669.11, this court has held that the State must prove the testing device or equipment was in proper working order at the time of conducting the test. *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988); *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980).

The record shows that the Intoxilyzer test was performed according to methods approved by the Department of Health by an individual possessing a valid permit issued by the

department for that purpose and that the equipment was in proper working order at the time the test was performed. The test result, therefore, was competent evidence of breath alcohol concentration under § 39-669.11 and was admissible. See, e.g., *State v. Hvistendahl*, 225 Neb. 315, 405 N.W.2d 273 (1987) (a test made in compliance with § 39-669.11 is sufficient to make a prima facie case on the issue of blood alcohol concentration); *State v. Tatara*, 230 Neb. 279, 430 N.W.2d 692 (1988) (Intoxilyzer test result was admissible pursuant to § 39-669.11); *State v. Dush*, 214 Neb. 51, 332 N.W.2d 679 (1983) (a test made in compliance with § 39-669.11 is admissible and does not create a presumption of guilt, but may be sufficient to make a prima facie case on the issue of blood alcohol concentration).

In support of his argument, the defendant has cited cases from jurisdictions which require some evidence relating the results of alcohol testing back to the time of arrest. See, *State v. Ladwig*, 434 N.W.2d 594 (S.D. 1989) (in prosecution for driving with .10 percent or more of alcohol in the blood, it was not necessary for an expert witness to extrapolate for the jury; however, evidence necessary to enable the finder of fact to extrapolate was required); *State v. Dumont*, 146 Vt. 252, 499 A.2d 787 (1985) (in prosecution for driving while under the influence of intoxicating liquor, numerical results of blood alcohol content tests should be excluded unless related back to the time of operation); *Desmond v. Superior Court*, 161 Ariz. 522, 779 P.2d 1261 (1989) (a blood alcohol content of .10 percent or more at the time of testing did not establish a prima facie case of driving with a blood alcohol content of .10 percent or more where there was no attempt to relate the test results back to the time of arrest; however, the results of a blood alcohol test taken within a reasonable time after arrest were relevant and admissible without foundation relating blood alcohol content back to the time of arrest). See, also, *State v. Murphy*, 7 Ohio Misc. 2d 1, 453 N.E.2d 1304 (1983).

This court considered a similar issue in *State v. Hvistendahl, supra*. In that case, the defendant was convicted of operating or being in actual physical control of a motor vehicle when he had ten-hundredths of 1 percent or more by weight of alcohol in his body fluid, in violation of § 39-669.07 (Reissue 1984).

Hvistendahl was stopped by a Bellevue police officer while driving his automobile in Sarpy County. He was arrested and taken to the police station, where a test of his breath on an Intoxilyzer Model 4011AS produced a reading of .133 percent. Although the case was not tried before a jury, the trial court made no determination beyond a finding that the defendant operated a motor vehicle with more than ten-hundredths of 1 percent of alcohol in the defendant's body fluid.

In support of Hvistendahl's contention on appeal that there was insufficient evidence to sustain his conviction, he argued, in part, that the breath test was performed over an hour after he was stopped by the police. This court stated:

> [A] test made in compliance with Neb. Rev. Stat. § 39-669.11 (Reissue 1984) is sufficient to make a prima facie case on the issue of blood alcohol concentration. See *State v. Dush*, 214 Neb. 51, 332 N.W.2d 679 (1983). Thus, any testimony adduced by the defendant as to the accuracy of a breath test taken over an hour after the stop is admissible for the purpose of raising the specter of reasonable doubt in the mind of the trier of fact.

*Hvistendahl, supra* at 319, 405 N.W.2d at 277. We determined that the testimony of the defendant's expert witness did not rise to the level of casting reasonable doubt on the defendant's guilt as a matter of law. The defendant's conviction was affirmed.

A number of jurisdictions hold that matters of delay between driving and testing are properly viewed as going to the weight of the breath test results, rather than to the admissibility of the evidence.

In *State v. Taylor*, 132 N.H. 314, 566 A.2d 172 (1989), the defendant was convicted of driving while under the influence of intoxicating liquor. He claimed on appeal that the trial court erred in instructing the jury that his blood alcohol level of .13 percent was prima facie evidence that he was driving under the influence of intoxicating liquor. The defendant contended that since his blood alcohol content was tested approximately 1 hour 15 minutes after he was arrested, the test results did not accurately reflect his blood alcohol content at the time he was operating his vehicle.

Taylor had been stopped after a police officer observed the

defendant's truck traveling at a fairly slow rate of speed for the time of day and the traffic conditions. The vehicle was "hugging the right side of the road," *id*. at ____, 566 A.2d at 173, as if it was beginning to pull over, and came to a stop partially in the roadway. The officer, who had approached the defendant's vehicle with the intent to offer assistance, activated his blue lights as he stopped in order to protect the safety of the defendant and himself. The defendant immediately exited his vehicle, approached the officer, and spontaneously exclaimed, " 'I know I only had two beers, but I feel too drunk to drive and I won't drive anymore.' " *Id*. The defendant's speech was slurred and his eyes were glassy and red. He appeared dazed and confused and failed some field sobriety tests. The defendant was arrested at 12:34 a.m., and the officer who transported him to the police station noticed a strong odor of alcohol coming from the defendant. A test of the defendant's blood was conducted at 1:38 a.m., after a mandatory 20-minute waiting period, and showed that the defendant's blood alcohol content was .13 percent.

In affirming the defendant's conviction, the Supreme Court of New Hampshire noted that the defendant was charged with driving while under the influence of intoxicating liquor, in violation of N.H. Rev. Stat. Ann. § 265:82(I)(a) (Cum. Supp. 1988), and that in order to convict a person under that section, the State need not prove the defendant's blood alcohol content was .10 percent or more at the time he was operating his vehicle, but need only prove impairment to any degree. Thus, the defendant could reasonably have been convicted based on the arresting officer's testimony that the defendant was unfit to drive the motor vehicle.

N.H. Rev. Stat. Ann. § 265:89 (Cum. Supp. 1988) provided, in part:

> "**Evidence.** Upon complaint, information, indictment or trial of any person charged with the violation of RSA 265:82 or 82-a, the court may admit evidence of the amount of alcohol in the defendant's blood at the time alleged, as shown by a test of his breath, blood, or urine as provided in RSA 265:84. . . . Evidence that there was, *at the time alleged*, 10/100 percent or more by weight of

alcohol in his blood is prima facie evidence that the defendant was under the influence of intoxicating liquor." (Emphasis supplied.)

After a 2-day trial, the jury was instructed that the test result of .13 was prima facie evidence that the defendant was under the influence, but that the jury was not required to find that the defendant was under the influence of alcohol. The defendant objected to the instruction because his driving occurred approximately 1 hour 15 minutes before the blood test was administered and the State failed to establish a temporal nexus between the alcohol in the defendant's blood at the time he was operating the vehicle and the defendant's level of blood alcohol at the time of the test.

The court held that the phrase "at the time alleged" referred to the time of the offense alleged in the complaint, which was the time the defendant was operating a motor vehicle while under the influence of alcohol. The language "at the time alleged," however, did not compel the conclusion that the State was required to prove the defendant had a .10 percent or greater blood alcohol content at the precise time he was driving before the instruction as to prima facie evidence could be given.

> Although RSA 265:89 (Supp.1988) employs the phrase "at the time alleged," we interpret a statute so as not to produce an illogical result. . . . We also examine a statute in relation to the statutory scheme. . . . With these principles in mind, we conclude that RSA 265:89 (Supp. 1988) does not require the State to demonstrate a conclusive nexus between the test result and the defendant's blood alcohol content at the precise time he was driving, before the test can be admitted as prima facie evidence that the defendant was intoxicated while driving.

*State v. Taylor,* 132 N.H. 314, ____, 566 A.2d 172, 174 (1989).

The court also discussed the practical difficulties which would arise if the defendant's interpretation of the statute were adopted:

> It is impossible as a practical matter for a test to reflect a defendant's exact blood alcohol content at the precise time he was driving, as there is necessarily some lag time

between the driving and the administration of the test, during which the officer determines whether a test is necessary, and, if so, secures the driver's car and transports the driver to the test location. Furthermore, both the statute and the administrative rules pertaining to the administration of the tests for blood alcohol content require the passage of time both explicitly and implicitly. . . . Common sense indicates that the defendant may, on many occasions, have to wait for a reasonable period of time for a certified intoximeter operator to arrive at the police station to take a breath test, or for a certified health care provider to arrive at a medical facility to take a blood test. These delays are unavoidable, given the procedures established to secure accurate test results, a goal that is desired by defendants and the State alike.

Since a test cannot reflect a defendant's blood alcohol content at precisely the moment he was driving, were we to follow the defendant's reasoning, no test could ever be prima facie, or stand alone as, evidence of intoxication at the time of driving, since the State would always be required to present further evidence to prove a nexus between the test result and the defendant's blood alcohol content at the moment he was driving. Such a result is contrary to RSA 265:89 (Supp.1988), which allows for evidence of blood alcohol content above a certain level, "shown by a test of . . . breath, blood or urine," to be considered prima facie evidence of intoxication.

*Taylor, supra* at _____, 566 A.2d at 174-75. The court interpreted the statutory phrase "at the time alleged" to allow a test exhibiting a blood alcohol content of .10 percent or greater, taken within a reasonable period following the defendant's operation of the motor vehicle, to be prima facie evidence of the defendant's intoxication while operating the motor vehicle. The court held that the 1-hour-15-minute period between the defendant's operation of his motor vehicle and the blood test was a reasonable period of time and that the trial court properly gave the instruction as to prima facie evidence.

Next, the defendant emphasized certain testimony regarding the existence of a blood alcohol curve. In response to this

argument, the court noted: "The fact that the test was administered approximately one hour and fifteen minutes after the defendant's operation of the motor vehicle, however, goes to the weight to be accorded to the test by the trier of fact." *Id.* at _____, 566 A.2d at 175.

Taylor also argued that the State should be required to provide the jury with evidence of his blood alcohol at the time he was driving by extrapolating such evidence from the results of the blood alcohol test taken at the police station. The court found that this approach would place an impossible burden on the State for two reasons:

> First, it is conceded by the State and the defendant that a driver's blood alcohol content increases for a period of time after consumption and then begins to decrease as the alcohol is eliminated, principally through metabolism. *See* 2 D. Nichols, *Drinking/Driving Litigation* § 23:01 (1985). Extrapolation, however, requires evidence that the State will rarely be able to acquire because of the defendant's constitutional right to remain silent. Extrapolation requires evidence as to when, and in what amounts, the defendant consumed the alcohol prior to driving. Without this information, which is wholly within the defendant's knowledge in the vast majority of cases, extrapolation of blood alcohol content back to the time of driving becomes an impossible task. The legislature could not have intended to place such an impossible burden on the State.

> Second, even if the State were able to obtain evidence as to the exact time and the precise amount of alcohol consumed by the defendant prior to his driving, conclusive evidence of the blood alcohol content at the time of driving could still not be offered to the jury in the guise of a general rule because the rate of absorption of alcohol varies considerably between individuals. One study found that the peak blood alcohol level is reached, after consumption, in anywhere from 14 to 138 minutes. *Nichols, supra* § 23:05 (Supp.1989). The extrapolation evidence is further complicated by the amount of food consumed by the defendant at the time he consumes alcohol, which affects the rate of absorption. *Nichols,*

> *supra* § 23:06. This evidence is, again, wholly within the knowledge of the defendant. The legislature could not have intended to place such impossible roadblocks in the way of the State in prosecuting DWI cases.

*State v. Taylor,* 132 N.H. 314, ____, 566 A.2d 172, 175-76 (1989).

The court held that where the police obtain a blood alcohol sample within a reasonable period of time after driving occurs, the results of that test may be admitted as prima facie evidence of intoxication. "The jury will then be free to give what weight they determine is appropriate to such prima facie evidence in determining whether the defendant is guilty or innocent of driving while under the influence of intoxicating liquor." *Id.* at ____, 566 A.2d at 176.

The court also announced that the same reasoning would apply with equal force to prosecutions under the per se statutes, including § 265:82(I)(b), which statute requires proof that an accused's blood alcohol content was .10 percent or more at the time he was operating his vehicle. "Hence, the State may present evidence of breath or blood tests taken within a reasonable period of time after driving occurs to indicate the presence of blood alcohol necessary for a conviction." *Taylor, supra* at ____, 566 A.2d at 176.

In *People v. Kappas,* 120 Ill. App. 3d 123, 458 N.E.2d 140 (1983), the defendant appealed his conviction by a jury of "driving while his blood alcohol concentration was at or in excess of .10%." *Id.* at 125, 458 N.E.2d at 141. In *Kappas,* the defendant was stopped after police observed his car weaving out of his traffic lane. After stopping the defendant, the officers detected the odor of alcohol and found open containers of alcohol in the defendant's car. The defendant failed several field sobriety tests, was arrested, and was taken to state police headquarters, where more physical tests were given and a Breathalyzer test was administered. The test, which was given approximately 38 minutes after the defendant was stopped, showed the defendant's blood alcohol percentage to be .11 percent.

On appeal, the defendant argued that "based on well-recognized scientific principles there is no assurance that

his [blood alcohol concentration] was the same at the time of driving as it was at the time that he was tested." *Id*. at 127, 458 N.W.2d at 142. The court noted that the officer in charge of maintenance and certification of Breathalyzers admitted that the machine only showed the breath alcohol concentration of an examinee at the time of testing and that there was no way to judge a person's breath alcohol concentration any time prior to the test. The officer had testified on cross-examination regarding his knowledge of the "blood alcohol absorption curve," which would cause the apparent discrepancy. The Appellate Court of Illinois determined that it could consider the effect of the blood alcohol absorption curve in deciding whether a 38-minute delay between the arrest and testing might render the jury's verdict improper as against the manifest weight of the evidence:

> The blood alcohol absorption curve is derived by plotting the amount of alcohol which the body absorbs against the time it takes to do so. Until absorption is complete, the blood alcohol indicator rises continually. Therefore, a breathalyzer test administered immediately after ingestion of alcohol will show a lower [blood alcohol concentration] than the same test taken somewhat later, even though the amount of alcohol consumed is exactly the same. In light of these principles, it is apparent that a breathalyzer test administered at any time other than on the scene of an arrest might likely yield different results than a test given later. The issue boils down to what degree a 38-minute wait should affect the inferences which a jury could reasonably draw from all the evidence in a case.

*Id*. at 128, 458 N.E.2d at 143. The court adopted the view that matters of delay between driving and testing are properly viewed as going to the weight of the breath test results and, as such, must be viewed in light of the circumstances surrounding the arrest.

> Since there was additional evidence which supports the finding that at the time he was driving defendant's [breath alcohol concentration] was at or above the level proscribed by statute, the fact that there was a 38-minute period between the time he was observed driving and the

time he was tested by a breathalyzer should not result in a jury's verdict being overturned. The import of a 38-minute delay is reduced further by the fact that police are *required* to wait 20 minutes following arrest to administer the test. This means that the nonstatutory delay was only 18 minutes from the time defendant was stopped. During this period the defendant's car was searched, he was asked to, and did perform (poorly), field sobriety tests, and was then transported to State police headquarters. Under these circumstances we find the delay slight and totally insufficient to render the breathalyzer results nonprobative. No error.

(Emphasis in original.) *Id*. at 129, 458 N.E.2d at 144. See, also, *People v. Borst*, 162 Ill. App. 3d 830, 516 N.E.2d 854 (1987); *People v. Newman*, 163 Ill. App. 3d 865, 516 N.E.2d 667 (1987); *People v. Miller*, 166 Ill. App. 3d 155, 519 N.E.2d 717 (1988) (a delay between driving and testing goes to the weight of the evidence).

In *Com. v. Speights*, 353 Pa. Super. 258, 509 A.2d 1263 (1986), *appeal denied* 517 Pa. 594, 535 A.2d 83 (1987), the Superior Court of Pennsylvania considered the question of whether, without expert testimony, the result of a Breathalyzer test administered 2 hours 45 minutes after the defendant operated a motor vehicle constituted sufficient evidence to convict the defendant of violating 75 Pa. Cons. Stat. § 3731(a)(4). That statute provided that " '[a] person shall not drive, operate or be in actual physical control of the movement of any vehicle while . . . the amount of alcohol in the blood of the person is 0.10% or greater.' " 509 A.2d at 1267.

In *Speights*, the defendant did not contest the admissibility of the Breathalyzer test result, but claimed that because such a considerable timespan elapsed between the commission of the offense and the blood testing, expert testimony was needed to relate the test result back to the period when he was operating his vehicle. The court held that blood alcohol test results could, by themselves, without explanation by expert testimony, suffice to support a conviction, but that blood alcohol test results do not compel the trier of fact to find a defendant guilty where there is competent evidence of record challenging the test

results.

In reaching this decision the court noted that there is ordinarily a time lapse between the occurrence of an offense and the performance of alcohol testing on a motorist. Considering information published in its earlier cases, the court observed that alcohol has no effect until absorbed into the bloodstream, which occurs from 30 to 90 minutes after consumption.

> Thus, if a defendant's drinking is confined to a period immediately before arrest, a test within the first 30 minutes after arrest may show a low blood alcohol content whereas a test within 60 minutes after arrest may indicate a high blood alcohol level. [Citations omitted.]
>
> However, "the percentage of alcohol in the bloodstream diminishes rapidly after drinking ceases." [Citations omitted.] Thus, if an accused stops drinking 30 to 90 minutes before arrest, the accused's blood alcohol content will probably be falling at the time of arrest. The accused will accordingly benefit from a pre-test delay due to the "evanescent nature of the alcohol in [the] bloodstream." [Citations omitted.]

509 A.2d at 1266.

In *Com. v. Slingerland*, 358 Pa. Super. 531, 518 A.2d 266 (1986), the defendant was taken to a hospital after losing control of his motorcycle. When the investigating police officer arrived at the hospital, he detected an odor of alcohol about the defendant's person and saw that the defendant was disoriented and glassy eyed. The officer believed that the defendant was under the influence of alcohol and requested that a blood sample be drawn. The blood sample was taken 1 hour 23 minutes after the motorcycle accident and disclosed a blood alcohol content of .13 percent. The Superior Court of Pennsylvania found that the evidence supported the defendant's conviction for driving with a blood alcohol content of .10 percent or greater, notwithstanding a lack of expert testimony relating the blood test result to blood alcohol content at the time of driving. The court stated:

> A similar argument was made and rejected by this Court in *Commonwealth v. Speights*, 353 Pa.Super. 258, 509

A.2d 1263 (1986). There, the sole evidence of the defendant's blood alcohol level was the result of a breathalyzer test administered two hours and forty-five minutes after the defendant had operated a motor vehicle and showing an alcoholic content of 0.12%. In response to the same argument made by appellant in the instant case, the Court said: "[W]e conclude that the Commonwealth is not *required* to offer evidence relating a blood alcohol test result back to the time of a vehicular offense and that the absence of expert testimony relating back a remote test result will not render the test result insufficient evidence upon which the fact-finder *may* convict a defendant of violating subsection 3731(a)(4) of the Vehicle Code." *Id.* at ____, 509 A.2d at 1266 (emphasis in original).

518 A.2d at 268-69.

The court noted that the defendant had been drinking over the course of the entire evening, had not consumed a large quantity of alcohol immediately before operating his motorcycle, and admitted that while operating his motorcycle he had been able to feel the effect of the alcohol he had consumed. The blood test result, when considered in the light of the foregoing evidence, was sufficient to permit the jury to find that the defendant had operated his motorcycle while the amount of alcohol by weight in his blood was .10 percent or greater.

In *Com. v. Boyd*, 373 Pa. Super. 298, 541 A.2d 21 (1988), the defendant was charged with driving under the influence to a degree which rendered him incapable of safe driving (count I) and with operating a vehicle while his blood alcohol content was .10 percent or greater (count II). After a jury trial, the defendant was acquitted on count I, but was convicted on count II. There was evidence that the defendant was driving in an erratic manner, smelled of alcohol, failed field sobriety tests, admitted to consuming five gin and tonics and one beer, and declared that he was drunk. The Breathalyzer test was administered one-half hour after the defendant was stopped.

The issue considered on appeal was whether the prosecution was required to present expert testimony relating the blood

alcohol test result back to the time the defendant was driving his car. The court followed the holding of *Com. v. Speights*, 353 Pa. Super. 258, 509 A.2d 1263 (1986), that the prosecution was not required to offer evidence relating a blood alcohol test back to the time of a vehicular offense and that the absence of expert testimony relating back a remote test result would not render the test result insufficient to convict a defendant. The *Boyd* court commented: "We will not overrule precedent nor invade the province of the legislature by creating a rule that imposes upon the Commonwealth a burden of relating blood alcohol content test results back to the time of the vehicular offense." 541 A.2d at 23.

In *Sullivan v. State*, 517 N.E.2d 1251 (Ind. App. 1988), the defendant was convicted by a jury of operating a vehicle with .10 percent or more by weight of alcohol in his blood. He claimed on appeal that the evidence was insufficient to show that at the time he operated the vehicle, his blood alcohol content was at least .10 percent, because the State failed to present any evidence of extrapolation or chemical test results obtained at the time of the alleged violation.

The court stated that given the factual circumstances of the case, the jury could reasonably have determined that the defendant's blood alcohol level met or exceeded .10 percent at the time of the offense without expert testimony relating the chemical test result back to the time of the violation. These facts included the defendant's testimony that on the evening of his arrest, he consumed 9 or 10 beers in a 1-hour period, slept for about 3 hours, got up, consumed a cup of coffee, got into his truck, and drove one block to a friend's house, where he was stopped by the arresting officer. Police records indicated the defendant reported at the time of his arrest that he did not know how many beers he had consumed that evening. The defendant had not eaten for over 24 hours before his arrest and did not put anything in his mouth during the ride to the police station. Breathalyzer test results obtained 25 minutes after the defendant was stopped showed a blood alcohol content by weight of .20 percent. The court stated:

> We believe it reasonable to presume the jury was aware Sullivan's blood-alcohol level could have been higher or

lower than the level indicated by the test, at the time of the violation. In light of the fact that the undisputed evidence establishes Sullivan did not ingest any alcohol·for a period of at least three hours and twenty minutes before the blood-alcohol sample was taken, and Sullivan was tested within a short time after the alleged violation, the jury could have logically reached the conclusion, based upon common sense and experience gained from everyday living, that Sullivan's blood-alcohol level was higher at the time of the alleged violation than it was when Sullivan was tested. Nonetheless, the circumstantial evidence presented, when viewed in the light most favorable to the verdict, is ample to sustain the jury's conclusion that Sullivan operated the vehicle with at least ten-hundredths percent of alcohol in his blood.

*Id.* at 1253.

Similarly, in *Livingston v. State*, 537 N.E.2d 75 (Ind. App. 1989), the defendant was convicted by a jury of operating a vehicle with a .10-percent or greater blood alcohol content and argued on appeal that the evidence was insufficient to sustain his conviction. In that case, the defendant was stopped after an Indiana state police officer observed him driving erratically and at speeds exceeding 80 miles per hour. The defendant's eyes were bloodshot, his pupils were dilated, and there was a strong odor of alcohol on his breath. The defendant was given an Intoxilyzer test which revealed the defendant's blood alcohol content to be .13 percent.

The defendant acknowledged the presumption set out in Ind. Code Ann. § 9-11-4-15(b) (Burns Cum. Supp. 1989), but claimed that sufficient evidence was presented to rebut the presumption. Section 9-11-4-15(b) provided:

If, in a prosecution for an offense under IC 9-11-2, evidence establishes that:

(1) A chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and

(2) The person charged with the offense had at least ten hundredths percent (0.10%) by weight of alcohol in the

person's blood at the time the test sample was taken; the trier of fact shall presume that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However this presumption is rebuttable.

There was evidence that the Intoxilyzer test was given at least 29 minutes after the defendant was stopped, that a person's blood alcohol content may either be rising or falling when he is tested, and that it was medically possible for a subject to test below a .10-percent blood alcohol content and 30 to 35 minutes later test over .10 percent. Based on the foregoing, the defendant claimed that there was insufficient evidence to establish that he had a blood alcohol content of .10 percent at the time of the offense.

The court noted that the defendant himself testified that on the day of his arrest he went to a local lounge at approximately 5:15 p.m., where he consumed three beers, had dinner, drank another beer and a shot of peppermint schnapps, and then left for home at approximately 9 p.m. When he was stopped, the defendant told the police that he had five or six beers and two drinks, but nothing in the last 2 hours. The arresting officer testified that he did not see the defendant put anything in his mouth after he was stopped. The officers also followed the method approved by the State Department of Toxicology in administering the Intoxilyzer test to the defendant. This method included observing the defendant for 20 minutes prior to the test to ensure that he consumed no food or drink. The court stated:

> In this case, the jury could have determined that Livingston's blood alcohol content at the time of the alleged offense was lower than the level indicated by the test. However, given the evidence which established that Livingston did not ingest any alcohol for a period of approximately two hours and 20 minutes prior to the test, we believe the jury could reasonably have concluded that his blood alcohol content was higher at the time of the alleged offense. Nevertheless, the evidence presented was more than sufficient to sustain the jury's finding that

Livingston operated a vehicle with a .10% or greater blood alcohol content. *See Sullivan v. State* (1988), Ind. App., 517 N.E.2d 1251.

*Livingston, supra* at 77.

In *State v. Miller*, 555 So. 2d 391 (Fla. App. 1989), the State appealed an order granting a motion to suppress results of a blood analysis test in a prosecution for driving while under the influence of alcohol. In that case, the defendant was given a chemical breath test 1 hour 20 minutes after he was stopped. The reading was .14 percent. In a deposition, the State's toxicologist stated that he could not testify within a reasonable degree of scientific certainty what the defendant's blood alcohol level was at the time he was driving and that the level could have been lower than .10 percent when he was driving. The defendant moved to suppress the results of the test, alleging that the reading was irrelevant and did not prove his blood alcohol level at the exact time he was driving; thus, the prejudicial effect of the chemical test outweighed its probative value.

In support of his motion, the defendant argued, and the trial court held, that the results of a blood alcohol level test would only be admissible evidence under Fla. Stat. § 316.193 (1987) for driving under the influence if the State proved the accused's actual blood alcohol level at the time he was driving and not the level some time thereafter. The Florida appellate court stated:

> Following this reasoning, before a test result would be admissible, the state would be required to present supplementary evidence relating the test result back to the time of driving in order to prove that the [blood alcohol level] was .10 per cent or higher at the time of driving. This process is termed retrograde extrapolation. In order for the state to be able to extrapolate the [blood alcohol level] at the time of driving, numerous variables, including the period of consumption, how much was consumed, and the time of the last drink, among others, must be known and assessed. However, it may be that for some reason (such as here, the defendant's invocation of his Miranda rights), the state does not know all the variables necessary to relate the test result back to the time of driving.

*Miller, supra* at 392. The court noted that "[i]t is noncompliance with proper [statutory] testing procedures which would render test results inadmissible," *id.* at 393, and that the adequacy of the testing procedure was not at issue. Further, the statute pursuant to which the defendant was charged provided that an accused may be convicted for driving under the influence if it was proven "*either* that the person was affected by the alcohol to the extent that his normal faculties were impaired *or* that his blood alcohol level was .10 per cent or higher." (Emphasis in original.) *Id.*

> Accordingly, the state is not necessarily required to prove that an accused's [blood alcohol level] was greater than .10 per cent at the time of driving in order to convict him of driving under the influence of alcohol. The state may prove that based on the totality of admissible evidence, including the test result, the defendant's normal faculties were impaired. Although the timing of the [blood alcohol level] test may affect its accuracy, the question of timeliness is to be left to the trier of fact in each case. Once the test result is placed in evidence, a defendant may generally attack the accuracy of the test on any relevant ground.

*Id.* The court then observed that various other jurisdictions have held that it is unnecessary to relate blood alcohol level test results back to the time of driving in order for the result to be admissible evidence in a drunk driving case. "Instead, the result is admissible and any time lapse in the test's administration or failure to extrapolate the result back to the time of driving goes to the weight of the evidence, not its admissibility." *Id.*

The court held: "[T]he result of a properly administered test measuring the accused's [blood alcohol level] is relevant evidence, and any failure of the state to extrapolate the result back to the time of driving goes to the weight given to the evidence rather than its admissibility." *Id.* at 393-94. Because the issue involved was of great public importance, the Florida District Court of Appeal certified the question presented to the Supreme Court of Florida. No decision has been announced in that case.

As stated above, § 39-669.07 (Supp. 1987) states one offense

which may be proven in different ways. We hold that matters of delay between driving and testing are properly viewed as going to the weight of the breath test results, rather than to the admissibility of the evidence. A valid breath test given within a reasonable time after the accused was stopped is probative of a violation of § 39-669.07. See, § 39-669.11 (Reissue 1988); *State v. Hvistendahl*, 225 Neb. 315, 405 N.W.2d 273 (1987). In some cases, the delay may be so substantial as to render the test results nonprobative of the accused's impairment or breath alcohol level while driving. In this case, however, the breath test was given less than 1 hour after the defendant was stopped. The evidence was relevant, and the trial court did not err in admitting the Intoxilyzer test result.

III. Jury Instruction.

In his final assignment of error, the defendant claims that jury instruction No. 10 created a mandatory presumption relieving the State of its burden to prove each and every element of the crime charged beyond a reasonable doubt, in violation of U.S. Const. amend. XIV and Neb. Const. art. I, § 3.

Instruction No. 10 stated, in part, as follows:

Under the complaint in this case, depending on the evidence, you may find the defendant:

1. Guilty or
2. Not Guilty.

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime charged in the complaint are:

1. The defendant did operate a motor vehicle or was in actual physical control of a motor vehicle;

2. The motor vehicle was operated by the defendant or was in actual physical control of the defendant in Cuming County, Nebraska, on or about JUNE 19, 1988; and

3. While operating or being in actual physical control of the vehicle at said time and place, the defendant was (a) under the influence of alcoholic liquor, or (b) had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath *as shown by chemical analysis of his breath*.

The State has the burden of proving beyond a reasonable doubt all of those elements necessary for conviction and this burden never shifts.

(Emphasis supplied.)

Citing *Seattle v. Gellein*, 112 Wash. 2d 58, 768 P.2d 470 (1989), the defendant complains that pursuant to the emphasized portion of the instruction, the jury was required to find that the State had proven the defendant's breath alcohol concentration at the time of driving by the only chemical analysis, the Intoxilyzer test, "shown" during the trial.

The language of the instruction, however, does not merit this interpretation. The instruction specifically states that the State has the burden of proving each element beyond a reasonable doubt and that the burden never shifts. Necessarily, element 3(b), "[w]hile operating or being in actual physical control of the vehicle at said time and place, the defendant . . . had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath as shown by chemical analysis of his breath," must be proved beyond a reasonable doubt. See *Seattle v. Gellein, supra* (Dolliver, J., dissenting). The assignment of error is without merit.

The judgment of the district court, affirming the judgment of the county court, is affirmed.

AFFIRMED.

WHITE, J., concurs.