REQUESTED BY: Secretary of State Scott Moore
You have requested the opinion of the Attorney General as to the validity and enforceability of Neb. Rev. Stat. § 32-1404
as it pertains to registration of petition circulators who circulate petitions outside the county of their residence. The issue presented concerns the validity of the "cross-county" circulator registration requirement in light of the decision of the United States District Court in Bernbeck v. Moore, 4:CV96-3263 (D.Neb., August 15, 1996).
Analysis
Neb. Rev. Stat. § 32-1404 (Supp. 1995) provides:
 Signers and circulators of initiative and referendum petitions shall meet the requirements of sections 32-629 and 32-630. A circulator shall have been registered to vote in Nebraska for one month prior to circulating an initiative or referendum petition. A registered voter who intends to circulate initiative and referendum petitions outside of his or her county of residence shall register with the Secretary of State on forms provided by the Secretary of State prior to circulating initiative and referendum petitions outside of his or her county of residence. The Secretary of State shall make available to the counties a list of registered circulators for each petition drive.
A related statute provides, in pertinent part:
 Any person . . . who willfully and knowingly circulates an initiative or referendum petition outside of his or her county of residence without registering with the Secretary of State shall be guilty of a Class I misdemeanor.
Neb. Rev. Stat. § 32-1546(1) (Supp. 1994).
In Bernbeck v. Moore, the Court held that "to the extent that Neb. Rev. Stat. §§ 32-629, 32-630,32-1404, and 32-1546(1) (Michie 1995) prevent a nonvoter or a registered voter who has been registered to vote for less than one month from circulating an initiative petition,those statutes are herewith declared unconstitutional
as being in violation of the First and Fourteen Amendments to the Constitution." (Memorandum and Order at p. 58) (emphasis added). The question, then, is whether that portion of § 32-1404
requiring certain petition circulators to register (1) remains enforceable; (2) was implicitly or necessarily invalidated by the court in Bernbeck; or (3) would be found unconstitutional if separately challenged.
We begin by noting the court in Bernbeck stated that "A single registration system for circulators is one way addresses could be maintained without requiring voter registration." (Order at 50) (See also Order at 25). This statement, however, is not dispositive of the question presented. In fact, when the court's order is examined, it becomes clear that the registration system, contemplated by the court, is not that created by the current statute. This is necessarily true because the purpose of the circulator registration requirement in the existing statute (§ 32-1404) is to assist local election officials in determining whether circulators whose names appear on petitions submitted for verification in their respective counties are registeredvoters in some other county. The verification statute expressly provides, in part:
 The election commissioner or county clerk shall compare the signature of each person signing and the circulator upon each of the pages of the petition with the voter registration records to determine if the circulator was a registered voter on the date of signing the petition and to determine if each signer was a registered voter on or before the date on which the petition was required to be filed with the Secretary of State.
Neb. Rev. Stat. § 32-1409 (Supp. 1994) (emphasis added).
In addition, when the court in Bernbeck discussed a permissible circulator registration system, it did so in hypothetical and future tense terms. (Order at 25) ("if the Nebraska legislature wished to regulate . . . if the legislature was concerned about having an address . . . election commissioners could be
authorized to demand and acquire address information from circulators. . . ."). Consequently, we do not believe the court's discussion was directed at the existing statute. It is true that § 32-1409 also provides,
 The express purpose of the comparison of names and addresses with the voter registration records, in addition to helping to determine the validity of such petition, the sufficiency of such petition, and the qualifications of the signer, shall be to prevent fraud, deception, and misrepresentation in the petition process.
However, "fraud prevention", as a justification for the voter registration requirement for circulators was expressly rejected by the court. (Order at p. 48). In light of the court's findings, there would appear to be no basis for treating "cross-county" circulators differently from those who circulate only in the county of their residence.[1]
Additionally, disparate treatment of circulators crossing county lines would likely violate the constitutional guarantee of equal protection. This is especially true here, since the classification involves a fundamental right (free speech).Bernbeck v. Moore, Order at 29, 41). Consequently, the disparate treatment between groups of circulators would be subject to strict scrutiny, and the statute would have to entail the least restrictive alternative to achieve a compelling state interest in order to survive review. See Op. Att'y Gen. No. 91070 (Sept. 18, 1991) (quoting State v.Kubik, 235 Neb. 612, 615, 456 N.W.2d 487, 490-91 (1990)).See also Op. Att'y Gen. No. 96035 (April 12, 1996). As the court noted in Bernbeck, "It is the rare case in which [the Supreme Court has] held that a law survives strict scrutiny." (Order at 41).
We note that other disparate treatment of cross-county circulators by the Nebraska Legislature has previously been declared unconstitutional by the Nebraska Supreme Court. In March of 1992, this office issued an opinion that LB 424, which prohibited circulation of petitions outside the county of one's residence, violated the Nebraska Constitution and theFirst Amendment. Op. Att'y Gen. No. 92050 (March 24, 1992). On May 22, 1992, the Nebraska Supreme Court agreed, in a unanimous decision. Stenberg v. Beermann, 240 Neb. 754,485 N.W.2d 151 (1992).
The court's decision in Bernbeck would appear to support enactment of a new circulator registration requirement that treated all circulators equally, but not one imposing registration only on some. The current statute is clearly designed "to determine if the circulator was a registered voter . . . .", Neb. Rev. Stat. § 32-1409, a requirement the court declared unconstitutional.[2]
Consequently, we conclude the decision of the United States District Court in Bernbeck, in which the court declared § 32-1404 unconstitutional to the extent it prevented petition circulation by those not registered to vote or those not registered to vote for 30 days, necessarily also invalidates the cross-county circulator registration requirement contained in the same statute. When all the related statutes are examined together, it is clear the cross-county registration requirement is part and parcel of the same regulation of petition circulators which the court declared unconstitutional. Therefore, the injunction entered preventing rejection of initiative petitions circulated by persons who did not comply with the provisions of § 32-1404 would appear to encompass the cross-county registration requirement as well.
In sum, although the Nebraska Legislature could enact a registration requirement for petition circulators which could survive constitutional review, it has twice enacted overreaching and unconstitutional requirements with the result that Nebraska has not had an enforceable circulator registration requirement since at least March 27, 1992. See Bernbeck v. Moore, 4:CV96-3263 (D.Neb., Aug. 15, 1996); Stenberg v.Beermann, 240 Neb. 754 (1992); Op. Att'y Gen. No. I92-055 (Aug. 14, 1992).
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
APPROVED:
Don Stenberg
Attorney General
[1] A review of relevant legislative history (including LB 76 (1994), LB 776 (1993), and LB 716 (1987) provides little insight into the purpose of the circulator registration statute, and no basis for going beyond the language of the statute itself.
[2] Since the "cross-county" circulator registration requirement's purpose is to assist in the verification of circulator's voter registration, and since this purpose has been declared unconstitutional, it is likely that the cross-county registration requirement also fails to "facilitate" the initiative process, thereby violating article III, § 4 of the Nebraska Constitution. See Op. Att'y Gen. No. 95031 (April 12, 1995) and the court decisions cited therein.
As the court in Bernbeck noted, "the Nebraska legislature has no legitimate power to limit the state constitutional right to the initiative process." (Order at 33). In addition, any new circulator registration requirement would itself have to be narrowly tailored to survive judicial review under the First Amendment of the U.S. Constitution. Since the compelling state interest in fraud prevention is the interest in assuring that the signatures of registered voters in Nebraska appearing on petitions are, in fact, true signatures (Order at 17), it would seem that a new circulator registration requirement could not prevent or delay circulation of petitions. Thus, a registration form could likely be required to be submitted at the time the petitions are turned in for verification, but probably not before. A court would examine the true impact and the true motive of any such registration requirement. The court noted that Nebraska already "has many devices for preventing signature fraud . . . [such as] requiring each signature be verified by election officials, requiring warnings on petitions, and requiring circulator affidavits. . . ." (Order at 52). As the court astutely observed, "there is frequently a political undercurrent to legislation that restricts the power of initiative and referendum. . . The right to initiative and referendum has the potential to threaten those who control the established political branches of state government." (Order at 32, FN 15).