STATE OF NEBRASKA, APPELLEE, V. STEVEN RODGERS, APPELLANT.

509 N.W.2d 668

Filed December 14, 1993.   No. A-93-057.

Byron M. Johnson, Scotts Bluff County Public Defender, and Jeffery A. Pickens for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

CONNOLLY, IRWIN, and WRIGHT, Judges.

Irwin, Judge.

Appellant, Steven Rodgers, was convicted of driving while under the influence of alcohol in the county court for Scotts Bluff County. The district court for Scotts Bluff County affirmed Rodgers' conviction, and Rodgers has timely filed an appeal in this court. For the reasons set forth below, we affirm the conviction.

A conviction in a bench trial of a criminal case must be sustained on appeal if the evidence, viewed and construed in a light most favorable to the State, is sufficient to support that conviction. *State v. Crowdell*, 241 Neb. 216, 487 N.W.2d 273 (1992). With this standard of review in mind, we turn to the record.

## FACTS

The record discloses that on April 12, 1992, police chief Larry Morris of the Minatare Police Department was returning to Minatare on U.S. Highway 26 from the Gering communications center. When Chief Morris was 3 to 4 miles outside of the Minatare city limits, he observed a vehicle driven by Rodgers cross the centerline twice and then cross "over into the far right side [of the highway] past the fog line twice." Chief Morris then radioed the communications center and requested that a deputy sheriff or a State Patrol trooper follow the vehicle and stop it "for a possible intoxicated driver."

Deputy Perry Britsch of the Scotts Bluff County sheriff's office responded via radio and stated that he was on the west side of Scottsbluff, apparently a substantial distance from Chief Morris' location. Nebraska State Patrol Trooper Brian Hegarty then responded via radio, stated that he was closer to Chief Morris' location than Deputy Britsch was, and asked the deputy if he, Trooper Hegarty, should respond to Chief Morris' request. Upon Deputy Britsch's affirmative response, Trooper Hegarty began driving his cruiser toward Chief Morris' location. As Trooper Hegarty was en route, Chief Morris radioed that Rodgers' vehicle had traveled completely left of the centerline and that Chief Morris feared an accident was imminent because there was traffic approaching from the opposite direction. Trooper Hegarty then advised Chief Morris

to stop Rodgers' vehicle.

Following this instruction, Chief Morris stopped the vehicle and approached Rodgers to ask for his driver's license, registration, and proof of insurance. Chief Morris testified that he smelled a strong odor of alcohol emanating from the interior of the vehicle when Rodgers lowered the driver's-side window. Chief Morris explained why he had stopped Rodgers and requested that Rodgers accompany him to his cruiser. Chief Morris then told Rodgers that a State Patrol trooper would arrive shortly to "take care of the rest of the stop." Trooper Hegarty arrived approximately 3 minutes later, and Deputy Britsch arrived shortly thereafter.

When Trooper Hegarty arrived, he took Rodgers' driver's license, registration, and proof of insurance and began an investigation. Trooper Hegarty testified that Rodgers' "eyes were red and watery, his speech was slow and slurred, he . . . somewhat staggered when he walked, and he also had a strong odor of an alcoholic beverage emanating from his person." Trooper Hegarty then administered field sobriety tests on Rodgers. Rodgers failed the field sobriety tests, and Trooper Hegarty placed him under arrest. Trooper Hegarty then transported Rodgers to the sheriff's office in Gering, where he was given an Intoxilyzer test. The test results showed that Rodgers had .115 of a gram of alcohol per 210 liters of breath. Rodgers was then charged with operating a motor vehicle while under the influence of alcohol, in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1990).

Rodgers pled not guilty to the charge and filed a motion to suppress all evidence obtained after his arrest, on the basis that his "arrest was made by Officer Morris of the Minatare Police Department outside of the officer's jurisdiction to arrest." A hearing was held on the motion, and after taking the matter under advisement, the county court denied Rodgers' motion to suppress. Thereafter, a bench trial was held, and the county court found Rodgers guilty of operating a motor vehicle while under the influence of alcohol. The court sentenced Rodgers to 7 days in jail, suspended his driver's license for 6 months, and fined him $200.

Rodgers appealed to the district court for Scotts Bluff

County, alleging that the county court erred in failing to suppress the evidence obtained after he was arrested and that there was insufficient evidence to sustain his conviction. The district court affirmed Rodgers' conviction, and Rodgers has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Rodgers assigns two errors on appeal. He claims that the evidence obtained after his arrest should have been suppressed and that evidence of his breath alcohol content should not have been admitted at trial.

## STANDARD OF REVIEW

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993); *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), *cert. denied*____ U.S. ____, 113 S. Ct. 1625, 123 L. Ed. 2d 183 (1993). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *Thompson, supra*; *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992).

In reviewing a criminal conviction, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence. Such matters are for the finder of fact, and the verdict must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Jansen*, 241 Neb. 196, 486 N.W.2d 913 (1992); *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992).

## DISCUSSION

*Authority to Arrest.*

In his first assignment of error, Rodgers claims that all evidence obtained after Chief Morris stopped Rodgers outside of the Minatare city limits should have been suppressed. In support of his claim, Rodgers cites *State v. Tingle*, 239 Neb.

558, 477 N.W.2d 544 (1991). In *Tingle*, a city of Neligh police officer arrested the defendant outside of the Neligh city limits for driving while under the influence of alcohol. The Nebraska Supreme Court held that "[a]bsent statutory or common-law authority, city police officers may not make warrantless misdemeanor arrests outside their jurisdiction." *Id.* at 564, 477 N.W.2d at 549. The court found that there was no common-law or statutory authority in Nebraska that permitted such arrests. The court thereupon found that the arrest in *Tingle* was illegal and that all evidence obtained subsequent to the arrest was to be suppressed.

In the present case, Rodgers claims that Chief Morris arrested him for driving while under the influence, a misdemeanor, outside of Chief Morris' geographical jurisdiction and that such arrest was illegal under *Tingle*. Rodgers concludes that all evidence obtained after Chief Morris allegedly arrested him should therefore have been suppressed.

Rodgers correctly asserts that Chief Morris had no authority to make a misdemeanor arrest outside of the city limits of Minatare *in his capacity as a city police officer*. See *Tingle, supra*. However, under Neb. Rev. Stat. § 23-1704 (Reissue 1991), Chief Morris would have the authority to make such an arrest if he did so in response to a deputy sheriff's request for assistance. Section 23-1704 provides: "The sheriff and his deputies are conservators of the peace, and to keep the same, to prevent crime, to arrest any person liable thereto, or to execute process of law, *they may call any person to their aid*." (Emphasis supplied.)

In *Anderson v. Bituminous Casualty Co.*, 155 Neb. 590, 52 N.W.2d 814 (1952), the Nebraska Supreme Court applied § 23-1704 to facts similar to the facts of the present case. In *Anderson*, the Nemaha County sheriff called on a Nebraska Safety Patrol trooper to assist him in capturing an escaped prisoner. The trooper thereafter called upon Anderson, a citizen, to assist in searching for the escapee. While Anderson was assisting in the search, a motor vehicle struck and killed him. Anderson's widow brought a claim against the county and the state in the Workmen's Compensation Court, claiming that Anderson was acting as an employee of the county and the state

when he was killed. Citing § 23-1704, the court found that Anderson was a de facto deputy sheriff at the time of his death and, thus, was entitled to compensation from the county's insurance carrier. In so holding, the court stated:

> "The sheriff may, without organizing a formal posse comitatus, orally summon to his assistance any person when he deems it necessary to effect an arrest. . . . The person thus summoned has all the authority of a formally deputized officer in such matter, and is in fact a de jure deputy sheriff. . . ." [Citations omitted.]
>
> Decedent was not formally deputized; that is, he was not appointed and confirmed nor did he take an oath or give bond. . . . Under situations, such as here, it is seldom practical to go through these formalities.
>
> . . . "[I]t is generally held that one who is actually acting as a deputy sheriff under color of an appointment is such officer de facto, although his appointment was not made with the formalities required by statute. . . ."

(Citations omitted.) *Anderson*, 155 Neb. at 597-98, 52 N.W.2d at 819. The court also held that in requesting Anderson's assistance, the trooper was acting at the request of the sheriff and was not acting as a patrolman of the Nebraska Safety Patrol.

We believe that the facts of the instant case present an even stronger basis for the use of § 23-1704 than was presented in *Anderson*. Deputy Britsch had jurisdiction to stop and arrest Rodgers; yet, due to the distance between Deputy Britsch and Rodgers and the need to act quickly to avert a potential tragedy, the deputy called Trooper Hegarty to his aid within the meaning of § 23-1704. Consistent with the Supreme Court's decision in *Anderson*, Trooper Hegarty at that point was a de jure deputy sheriff, with all of the authority of a formally deputized officer, including the power to call any person to his aid under § 23-1704. While Trooper Hegarty was en route, the situation became critical, as Rodgers was placing the lives of other motorists in imminent danger. At that point, Trooper Hegarty requested that Chief Morris stop Rodgers' vehicle. Trooper Hegarty's request was also a call to aid within the meaning of § 23-1704, and the request made Chief Morris a de facto deputy

sheriff with all of the authority of a formally deputized officer under § 23-1704. As such, Chief Morris, *in his capacity as a deputized officer*, had the authority to stop and arrest Rodgers.

Clearly the Legislature intended the term "keep the [peace]" within § 23-1704 to include stopping criminal activity that risks imminent loss of human life and limb. Deputy Britsch and the de facto deputies thus utilized their statutory power to summon assistance in an effort to keep the peace and to arrest criminals within the meaning of § 23-1704. The deputies did so by preventing a suspected intoxicated driver from endangering his own life as well as the lives of others traveling on the highway. Thus, we conclude that Rodgers' first assignment of error is without merit.

*Admission of Rodgers' Breath Alcohol Content.*

In his second assignment of error, Rodgers claims that evidence of his breath alcohol content should not have been admitted at trial. The record reveals that Rodgers was stopped at approximately 1 a.m. and that a sample of his breath was taken at 2:42 a.m., a difference of 1 hour 42 minutes. The sample contained .115 of a gram of alcohol per 210 liters of breath. Section 39-669.07(1)(c) provides that it is unlawful for a person to operate a motor vehicle when such person has a concentration of .100 of a gram of alcohol per 210 liters of his or her breath. Citing *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990), Rodgers claims that his breath sample was not taken within a reasonable time after he was stopped and that the test results were not probative of his impairment or breath alcohol level while driving.

In *Kubik*, the defendant was administered an Intoxilyzer test 43 minutes after he was stopped. The test revealed that the defendant had .139 of a gram of alcohol per 210 liters of breath. The defendant claimed that the state failed to show a proper nexus between his breath alcohol level at the time it was measured and at the time of his arrest. The court in *Kubik* reviewed authority from various jurisdictions regarding the relationship between the admissibility of breath alcohol test results and delays between driving and testing. The court cited with approval cases in which breath alcohol tests were admitted

into evidence although administered up to 2 hours 45 minutes after the defendant had been stopped. See, e.g., *State v. Taylor*, 132 N.H. 314, 566 A.2d 172 (1989) (holding that a test was admissible despite a 1-hour-15-minute delay between driving and testing); *Com. v. Speights*, 353 Pa. Super. 258, 509 A.2d 1263 (1986), *appeal denied* 517 Pa. 594, 535 A.2d 83 (1987) (holding that a test was admissible despite a 2-hour-45-minute delay between driving and testing); *Com. v. Slingerland*, 358 Pa. Super. 531, 518 A.2d 266 (1986) (holding that a test was admissible despite being taken 1 hour 23 minutes after the defendant was involved in an automobile accident). The court in *Kubik* concluded that evidence of delay between the time a defendant is stopped and the time he is given a breath test is properly viewed as going to the weight of the test results, rather than to the admissibility of such results. See, *State v. Tejral*, 240 Neb. 329, 482 N.W.2d 6 (1992); *State v. Towler*, 240 Neb. 103, 481 N.W.2d 151 (1992).

Likewise, in the present case we find that the delay between driving and testing must go to the weight, rather than to the admissibility, of the test results. Although the breath test was administered 1 hour 42 minutes after Rodgers was stopped, we find that the test results are probative on the issue of whether Rodgers was driving while under the influence of alcohol. Further, even if the test results were not admitted into evidence, we find that there was sufficient additional evidence to sustain Rodgers' conviction of driving while under the influence of alcohol. See § 39-669.07(1)(a). That evidence includes Rodgers' erratic driving, red and watery eyes, slurred speech, and staggered walk, as well as the odor of alcohol emanating from his person and his failure of field sobriety tests administered by Trooper Hegarty. Accordingly, we reject Rodgers' second assignment of error.

## CONCLUSION

Having found both of Rodgers' assignments of error to be without merit, we affirm the decision of the district court.

AFFIRMED.