STATE OF NEBRASKA, APPELLEE, V.
WILLIAM C. BLACKMAN, APPELLANT.
572 N.W.2d 101

Filed December 23, 1997.    No. A-97-105.

J. Blake Edwards and Robert S. Harvoy, of McGinley, Lane, O'Donnell, Reynolds & Edwards, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, IRWIN, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Appellant, William C. Blackman, was charged with the offense of driving under the influence (DUI). Trial was had before the county court without a jury. Blackman was found guilty. Blackman appeals, contending that the Intoxilyzer test result should not have been admitted into evidence because the test was not administered within a reasonable period of time and that the evidence was insufficient to convict him. We reverse the decision of the district court, which affirmed the county court's decision, and we remand the matter to the district court with directions to vacate the decision of the county court and to remand the case to the county court for dismissal for the reasons stated below.

## II. FACTUAL BACKGROUND

Two witnesses testified for the State, Officer Dion John Neumiller and Officer David Kling. Officer Neumiller testified first. He is a deputy sheriff employed by Keith County since March 1994. On May 31, 1996, he was working the evening shift, which runs from 5 p.m. until 2 or 3 a.m. Officer Neumiller testified that he was assigned a call by the emergency operations center regarding a report of a motorcycle in a ditch on a county road. This assignment was received at 10:03 p.m. Officer Neumiller traveled to the location that had been given him by the dispatcher and arrived in approximately 15 to 20 minutes. When he first arrived, he observed a motorcycle in a ditch that ran parallel to the road. He also observed Blackman next to the motorcycle and determined that Blackman was not physically injured. Officer Neumiller testified that Blackman told him that "he had been westbound when he met two vehicles. After the second vehicle passed him, he lost control of the motorcycle and went into the north ditch . . . ."

Officer Neumiller testified that he had contact with Blackman by the roadside for approximately 30 to 60 minutes. He testified that he smelled a strong odor of alcoholic beverage coming from Blackman's person. Upon asking Blackman if he had had anything to drink, Blackman stated, "No." Blackman explained that he had not had anything to drink that evening. Officer Neumiller then told Blackman that he could smell an alcoholic beverage emanating from Blackman's person. Blackman then explained that he had had something to drink the evening before, but that he had not had anything to drink that evening prior to Officer Neumiller's contact with him. Officer Neumiller assisted Blackman in removing his motorcycle from the ditch but did not allow Blackman to operate the motorcycle.

Officer Neumiller proceeded to conduct field sobriety tests. Blackman attempted to complete the alphabet test and then stated to Officer Neumiller that he knew his attempt at reciting the alphabet was wrong and that "he did not know his alphabet." Officer Neumiller also testified that he administered a horizontal gaze nystagmus test as well as a preliminary breath test, the results of which were not testified to, however. Officer Neumiller testified that due to Blackman's inability to successfully complete any other field sobriety tests and the strong odor of alcoholic beverage coming from his person, coupled with the facts that his eyes were bloodshot and that his speech was slurred, Officer Neumiller concluded that Blackman was under the influence of alcohol. He testified that he placed Blackman under arrest for suspicion of DUI.

Officer Neumiller testified that he had been involved in approximately 25 to 30 DUI investigations. He further testified that he had training and education in the detection and apprehension of persons suspected of being under the influence of alcohol. This included training supplied by the Nebraska Law Enforcement Training Center as well as an additional course given by the Nebraska Highway Safety Council specifically designed to teach recognition of alcohol-impaired drivers.

Regarding the timeframe during which these matters transpired, Officer Neumiller testified that after receiving the message from the dispatcher at 10:03 p.m. he immediately responded to this request to investigate the motorcycle incident.

Officer Neumiller was unable to testify whether or not the engine of the motorcycle was warm to the touch when he assisted Blackman in extricating it from the ditch. Officer Neumiller also could not recall whether or not the keys were in the ignition of the motorcycle.

Officer Kling then testified. He is employed by the Ogallala Police Department and administered the breath test to Blackman at 11:28 p.m. The results of that test showed the alcohol content of Blackman's breath to be in excess of the statutorily provided limit. Blackman does not take issue with Officer Kling's administration of the test, but argues the test result should not be admitted into evidence because it was not given in a timely fashion.

After all the evidence was submitted, the court found Blackman guilty of the crime of DUI and subsequently sentenced him. Blackman appealed to the district court, which affirmed the county court's decision. The matter was then timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Blackman assigns four errors. These are easily distilled into two: first, that the Intoxilyzer test was not timely administered and that, therefore, its results should not have been admitted into evidence; and second, that his conviction was contrary to the evidence.

## IV. STANDARD OF REVIEW

The standard of review will be set forth in the appropriate section of the analysis.

## V. ANALYSIS

### 1. Breath Test Given Within Reasonable Time

The nub of Blackman's first assigned error is that the State failed to show when Blackman was ever operating or in actual physical control of the motorcycle and that, therefore, the State was unable to prove that the Intoxilyzer test was administered within a reasonably short time from when he stopped operating or physically controlling the motorcycle, as required by statute.

A valid breath test given within a reasonable time after the accused was *stopped* is probative of a violation of the DUI

statute. See, Neb. Rev. Stat. § 60-6,196 (Reissue 1993); *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990). "In some cases, the delay may be so substantial as to render the test results non-probative of the accused's impairment or breath alcohol level while driving." *State v. Kubik*, 235 Neb. at 634, 456 N.W.2d at 501.

The Nebraska Supreme Court in *Kubik* reviewed authority from various jurisdictions regarding the relationship between the admissibility of breath alcohol test results and delays between driving and testing. The court in *Kubik* concluded that evidence of delay between the time a defendant is *stopped* and the time he is given a breath test is properly viewed as going to the weight of the test results, but also concluded that the delay sometimes may be such that the delay bears on the admissibility of the test results.

The difficult question presented by the case before us is what happens when the State presents absolutely no evidence of when a defendant stopped driving. Unlike the cases discussed by the Supreme Court in *Kubik*, the record presented here gives us no idea as to how much time passed from the time Blackman last drove his motorcycle on the roadway, and, therefore, we cannot determine how much time elapsed from the last act of driving by Blackman until the test was administered.

The crux of a DUI case is that the defendant is intoxicated at the time of driving. The vast number of DUI cases appealed to this court and to the Supreme Court involve situations where the arresting officer observes a defendant drive his or her vehicle on a public road and the defendant is *stopped* by the officer. When a breath test is administered subsequent to that stop, the test results serve as a basis to determine if the person was intoxicated when his or her driving was observed by the officer.

The critical issue before us is whether there is sufficient direct or circumstantial evidence from which a fact finder could infer that Blackman's intoxication and his operation or control of his motorcycle on a public road occurred simultaneously, not that Blackman was intoxicated when Officer Neumiller arrived.

Our duty in reviewing a case such as this is to scrutinize the totality of the evidence in the light most favorable to the State. *State v. Johnson*, 250 Neb. 933, 554 N.W.2d 126 (1996); *State*

*v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996); *State v. Kao*, 3 Neb. App. 727, 531 N.W.2d 555 (1995); *State v. Rodgers*, 2 Neb. App. 360, 509 N.W.2d 668 (1993).

It is also axiomatic that the State must prove every element of a criminal offense beyond a reasonable doubt. See *State v. Young*, 249 Neb. 539, 544 N.W.2d 808 (1996). Therefore, it was incumbent upon the State to prove that Blackman operated his vehicle at a time when he was intoxicated. See § 60-6,196.

The State introduced direct evidence of Blackman's intoxication. Officer Neumiller testified to his opinion that Blackman was intoxicated, together with the basis for this opinion, and the State elicited evidence showing that a breath test resulted in a .134 reading. Clearly, viewing this evidence in the light most favorable to the State, it was sufficient to prove that at the time Officer Neumiller found Blackman by the side of the road, Blackman was intoxicated.

However, there is no evidence whatsoever, direct or circumstantial, as to the time at which the accident occurred or as to how long Blackman had been in the ditch before Officer Neumiller found him. There was no evidence as to when alcoholic beverages had been drunk by Blackman prior to his driving mishap which resulted in his presence in the ditch or as to the time of the mishap. Additionally, there is no evidence showing the time the dispatcher received the call from the passerby or when the passerby saw Blackman. The record is devoid of any evidence that Blackman was even observed driving the motorcycle.

The undisputed evidence produced by the State was that Blackman was lying by his motorcycle and that he was under the influence of alcohol at the time Officer Neumiller arrived at the scene.

Entirely lacking in the presentation of the State was any evidence, direct or circumstantial, of the time when Blackman had the accident. For example, testimony indicating the motorcycle engine was warm or hot or about other circumstances could be probative regarding this issue. Therefore, we conclude that the State has not proved that the breath test was administered within a reasonable time after Blackman last drove his motorcycle on a public road or highway. The test results should have been excluded from evidence and not considered by the fact finder.

## 2. SUFFICIENCY OF EVIDENCE

Blackman assigns as error that his conviction was contrary to the facts presented to the county court. Blackman notes in his argument that when reviewing a conviction in a bench trial of a criminal case, an appellate court will sustain the conviction if the evidence, viewed and construed in a light most favorable to the State, is sufficient to support the conviction. See *State v. Johnson, supra.*

While the State introduced uncontested evidence that Blackman was under the influence at the time Officer Neumiller found him lying beside his motorcycle, it offered no direct evidence that Blackman was under such influence at the time of the accident, which time, as we have already seen, was unknown.

Other states have encountered this situation. See, *State v. Clark*, 130 Vt. 500, 296 A.2d 475 (1972) (defendant could not be convicted where there was no direct evidence that defendant was under influence at time of accident, despite uncontested testimony that defendant was intoxicated when police found defendant at accident scene); *Brown v. State*, 584 P.2d 231 (Okla. Crim. App. 1978) (that defendant was intoxicated when assisted at scene of accident was insufficient to sustain conviction in absence of evidence as to when accident occurred); *Coleman v. State*, 704 S.W.2d 511 (Tex. App. 1986) (because no evidence showed defendant was intoxicated at time he was driving prior to accident, conviction could not rest on evidence that defendant was intoxicated at scene when officers arrived).

Intoxication may be evidenced circumstantially by "*prior or subsequent condition* of intoxication within such a time that the condition may be supposed to be continuous." 2 John H. Wigmore, Evidence in Trials at Common Law § 235 at 33 (James H. Chadbourn rev. 1979). But it is obvious that in order to have the inference of being under the influence applied retroactively in the present case, the burden was upon the State to prove that Blackman's last act of driving occurred within a time period such that the intoxicated condition, in which he was found at the scene, had been continuous since his last act of driving. This burden of proof was not met by the State.

■ Additionally, the fact that Officer Neumiller offered opinion testimony that Blackman was intoxicated when found by the

roadside does not provide any more sufficient basis upon which to rest the conviction than the breath test does. It would be incongruous at best to say in a case such as that before us that the breath test is inadmissible to prove intoxication at some unknown prior time when Blackman was driving his motorcycle, yet that Officer Neumiller's testimony is admissible. Again, the issue in this DUI case is whether there is sufficient evidence from which a fact finder could infer that Blackman's intoxication and his operation or control of his motorcycle occurred simultaneously, not that Blackman was intoxicated when Officer Neumiller found him. In order to have the inference of being under the influence applied retroactively, the State must show that Blackman's driving occurred within a time period such that the intoxicated condition, in which he was found at the scene, had been continuous since the time of Blackman's driving. In this case, such inference can be no better made from Officer Neumiller's opinion than from the already excluded breath test. Concluding that there was insufficient evidence to support this conviction and sentence, we reverse the decision of the district court, which affirmed the county court's decision, and we remand the matter to the district court with directions to vacate the decision of the county court and to remand the case to the county court for dismissal.

JUDGMENT VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.

HANNON, Judge, dissenting.

I must respectfully dissent. In my opinion, no one who has gone into a ditch while riding a motorcycle after losing control of it, as Blackman admits he did, lies down beside the vehicle and proceeds to get drunk while remaining in that ditch. Furthermore, it is impossible for such a person to do so without the presence of a container from which to get the alcohol. With these and similar thoughts in mind, I am confident that Blackman was at least as drunk when he drove into the ditch as he was when Officer Neumiller observed his condition. I think the circumstances are more than adequate to support a verdict of guilt.